**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| SEAGEN INC., <br><br> Plaintiff, <br><br> v. <br><br> DAIICHI SANKYO CO., LTD., <br><br> Defendant. | Civil Action No.  2:20-CV-00337-JRG |

**SEAGEN INC.'S MOTION TO COMPEL
DAIICHI SANKYO CO., LTD.'S DISCOVERY RESPONSES AND PRODUCTION**

**I.     INTRODUCTION**

Plaintiff Seagen Inc. moves to compel Defendant Daiichi Sankyo Co., Ltd. ("DSC") to provide targeted discovery regarding DSC's assertions in its venue and jurisdiction motions. DSC's position that it has no role in the marketing, distribution, or sale of the accused product ENHERTU® (DS-8201) in the U.S. or Texas runs counter to its own public pronouncements in other contexts. While it is already clear that DSC has significant contacts with this forum that make it an appropriate venue for Seagen's infringement claim, further discovery will help build the record for why this action should proceed in Texas and advance the merits issues that will require discovery regardless.

**II.    BACKGROUND**

The parties have conferred multiple times regarding jurisdictional and venue discovery, including on telephonic conferences of counsel taking place on January 13, January 22, February 3, February 12, and February 19, 2021, as well as through correspondence exchanged between January 13 and February 19, 2021. To advance these issues, Seagen sent a discovery letter to DSC on January 21, 2021, providing a non-exhaustive list of documents relating to jurisdictional and venue discovery that Seagen expects DSC to produce. Even before DSC agreed to a schedule for this discovery, on January 27, 2021, Seagen served six interrogatories on DSC and noticed a 30(b)(6) deposition that corresponds to the venue and jurisdiction document topics sent in its January 21 letter.

On February 11, 2021, DSC provided written objections to Document Topic Nos. 1-6 that did not clearly articulate what documents DSC would (and would not) be producing in response

1

to Seagen's document topics. (*See* Exhibit A[1].) Lead and local counsel from each party met and conferred on February 12, 2021 in two calls that lasted several hours, but given DSC's refusal to clarify what information it would or would not produce, the parties did not reach agreement. Despite the court-ordered schedule that required the parties to meet and confer on DSC's written objections to Seagen's interrogatories and 30(b)(6) topics by February 12, 2021, it was not until after both of the parties' meet and confers that DSC provided written objections to these requests. (Dkt. 50.) As DSC earlier alluded, however, its objections mirror the form and substance of DSC's objections to Seagen's document topics, and likewise fail to state what information DSC is agreeing (and not agreeing) to provide. (Ex. A.)

On February 17, 2021, DSC sent Seagen a follow-up email regarding Document Topic Nos. 1-6. In this email, DSC offered to produce additional documents, but the offer was largely confined to documents "sufficient to show" the involvement of its wholly owned subsidiary Daiichi Sankyo, Inc. ("DSI") in the distribution and sale of ENHERTU®. While Seagen agreed to DSC's offer as to Document Topic No. 1, the offer was too narrow to satisfy Seagen's other requests because those requests are not limited to DSI. The parties met and conferred again on February 19, 2021, but the impasse remained.

## III.  ARGUMENT

Seagen's requests seek discovery that is directly relevant to rebutting DSC's position that it is not subject to jurisdiction in Texas and that venue is more appropriate in the District of Delaware. DSC has refused to provide a clear statement as to what information it will provide in response to Seagen's requests, and what information is not in its possession, custody, or control.

---

[1] Exhibit A, filed herewith, is a compilation of excerpts from DSC's Objections to Seagen's Jurisdictional and Venue Discovery (Nos. 1-6) dated February 11, 2021 and DSC's Objections to Seagen's 30(b)(6) Notice of Deposition dated February 12, 2021.

Rather, DSC uses its responses to advance the argument that DSI is the only proper defendant for Seagen's infringement action, even though it is DSC that manufactures and supplies ENHERTU® for sale in the U.S.[2]  For example:

- DSC narrows Document Topic Nos. 2 and 4 to its relationship with DSI, excluding any other affiliates involved in the distribution of ENHERTU®.

- As to Document Topic No. 3, DSC says it will provide documents sufficient to show U.S. sales by DSI but not DSC's own revenues from those sales, despite DSC having publicly announced that it is the entity that will book revenues from U.S. sales of ENHERTU®.[3]

- For Document Topic No. 5, DSC again says it will provide information sufficient to show DSI's involvement in sales, booking of sales, and distribution of ENHERTU® in the U.S., as well information on its ENHERTU® sales representatives in Texas.  But DSC's offer as to its own activities is much more limited, including only DSC's manufacturing abroad and a study that Seagen identified during the parties' meet and confer.[4]

Seagen has asked for discovery to test DSC's assertions.  If DSC does not have the information in its possession, custody, or control, it should so certify.  *See, e.g., Evans v. United Fire & Cas. Ins. Co.*, No. CIV.A. 06-6783, 2007 WL 2323363, at *3 (E.D. La. Aug. 9, 2007) (ordering party to "clearly stat[e] either that all non-privileged responsive materials are being produced or that it has no responsive non-privileged materials in its possession, custody or control").  But DSC's repeated objection that Seagen "incorrectly assumes that [DSC] has established a distribution chain to sell Enhertu® to the U.S. market" does not help Seagen understand what is and is not being produced.  And it is belied by DSC's own public representation that it books sales in the U.S. for ENHERTU®.  *See* supra fn.3.  Seagen's requested discovery is needed to address apparent inconsistencies and gaps in DSC's representations about these issues.

---

[2] *See, e.g.*, *Daiichi Sankyo, Inc., et al. v. Seagen Inc.*, Case No. 1:20-cv-10524-UNA (D. Del.), Dkt. 1 ¶¶ 14-15.
[3] In March 2019, DSC announced a collaboration with AstraZeneca relating to the development and commercialization of DS-8201, stating that "Daiichi Sankyo [Company, Limited] is expected to book sales in [the] U.S."  *See* https://www.daiichisankyo.com/files/news/pressrelease/pdf/006988/190329_886_E.pdf.
[4] DSC is listed as the sponsor of a DS-8201 trial with a location at M.D. Anderson Cancer Center.  *See* https://clinicaltrials.gov/ct2/show/NCT02564900.

As set forth below, DSC cannot contest that Seagen's requests seek relevant information. They were formed from similar requests that this Court has approved, or to test DSC's own specific assertions in its motions.  *See, e.g.*, *Uniloc USA, Inc. v. Apple Inc.*, No. 2:17-CV-00258-JRG, 2017 WL 3382806 (E.D. Tex. July 21, 2017); *see also Blitzsafe Texas LLC v. Mitsubishi Elec. Corp.*, No. 2:17-CV-00418-JRG, 2019 WL 2210686 (E.D. Tex. May 22, 2019).  While DSC has now agreed to provide certain documents, the discovery below remains in dispute.  And DSC's offer to produce documents—mostly involving its subsidiary DSI—on a "sufficient to show" basis does not fully satisfy its obligations under the Discovery Order governing this case. *See* Dkt. 51 at 3(b) (parties must "produce or permit the inspection of all documents, electronically stored information, and tangible things in the possession, custody, or control of the party . . ." relevant to [their] claims or defenses).

**Document Topic No. 2 (corresponding to Interrogatory No. 2 and 30(b)(6) Topic No. 2):**[5] All documents related to the relationship between DSC and any DSC Affiliate, including without limitation, Daiichi Sankyo, Inc., that has any role in any distribution chain(s) established for the purpose of bringing the ENHERTU® product to the U.S. market, including without limitation, organizational charts for DSC and any such DSC Affiliate.

Topic No. 2 is relevant because it seeks information on the relationship between DSC and any DSC affiliate with a role in ENHERTU®'s distribution to demonstrate each entity's involvement in bringing ENHERTU® into the U.S., what acts can be attributed to DSC, and what level of control DSC exerts over its affiliates.  In meet and confer, Seagen clarified that this request only seeks information regarding DSC's relationship with its affiliates as to ENHERTU® distribution, not details unrelated to ENHERTU®.  DSC contends that, because the request does not limit its scope to DSI, it is overbroad.  But excluding DSC's other affiliates from this request would deprive Seagen the opportunity to review potentially important evidence

---

[5] Seagen frames the issues based on exemplary requests.  DSC provided the same objections for related requests.

as to DSC's involvement in establishing the distribution chain for ENHERTU®. Public information suggests that DSI is not necessarily in charge of supply chain concerns, and that DSC has direct control over all of the business units within the Daiichi Sankyo Group.[6]

**Document Topic No. 3 (corresponding to Interrogatory No. 3 and 30(6)(b) Topic No. 3):** Documents sufficient to show DSC's gross revenues in U.S. dollars on a monthly basis from sales of ENHERTU® to each entity that sells or distributes ENHERTU® in Texas, the identity each such entity, and the quantity of sales made in Texas by each such entity.

Topic No. 3 is relevant because it seeks information regarding ENHERTU® sales in Texas, and what revenue DSC derives from such sales. This information will bolster the factual record regarding DSC's contacts with Texas, and is directly relevant to Seagen's damages. DSC improperly proposes to produce only information on DSI's sales and only for the period beginning October 2020. The restriction to DSI is inappropriate because DSC has stated that it will be booking U.S. sales. *See* supra fn. 3. The temporal restriction is inappropriate because ENHERTU® has been approved for sale in the U.S. since December 2019, and DSC has been placing the product in streams of commerce that reach Texas since shortly after its approval.[7]

**Document Topic No. 4 (corresponding to Interrogatory No. 4 and 30(6)(b) Topic No. 4):** All agreements between DSC or any DSC Affiliate, including without limitation, Daiichi Sankyo, Inc., on one hand, and any person that sells or distributes ENHERTU® in Texas, on the other hand, and all documents related to DSC's role in the procurement, negotiation, execution, and/or performance of the foregoing agreements.

Topic No. 4 is relevant to personal jurisdiction and venue because it seeks information that regarding the extent to which DSC takes an active role in the procurement, negotiation, execution, and performance of agreements made between DSC, or any DSC affiliate, and any entity that sells or distributes ENHERTU® in Texas. It is not overbroad because it is limited to agreements with third parties regarding the sales and distribution of ENHERTU® in Texas.

---

[6] *See* https://www.daiichisankyo.com/about_us/mission-strength/global_operations/.
[7] *See* https://www.fda.gov/news-events/press-announcements/fda-approves-new-treatment-option-patients-her2-positive-breast-cancer-who-have-progressed-available.

DSC's proposal would limit the scope to only those distributors that have agreements with DSI. But, as explained with respect to Topic No. 2, other DSC affiliates also appear to be involved in the management of DSC's supply chain. *See* supra fn. 6.

**Document Topic No. 5 (corresponding to Interrogatory No. 5 and 30(6)(b) Topic No. 5)**: All documents related to the activities of DSC, any DSC Affiliate, including without limitation, Daiichi Sankyo, Inc., or their distributors or sellers in Texas relating to the research, development, testing, manufacture, marketing, use, importation, sale, and/or offer to sell of ENHERTU®, including without limitation, the identity (by full name, job description, and location of residence and work) of each current and former DSC or DSC Affiliate employee or contractor residing or working in Texas with personal knowledge (whether such knowledge is uniquely held by the individual or not) about the features, composition, functionality, marketing, distribution, and/or sales of ENHERTU® or that is or was involved in the research, development, testing, manufacture, marketing, use, importation, sale, and/or offer to sell of ENHERTU®. This includes telecommuters.

Topic No. 5 covers DSC's contacts with Texas and sources of proof in Texas, making it relevant to both jurisdiction and venue. DSC can dispute neither that it manufactures and supplies ENHERTU® for U.S. sale, nor that it holds the trademark for ENHERTU® for U.S. sales and marketing.[8] But DSC's direct contacts with the U.S., and Texas in particular, appear to run much deeper. While DSC offers to produce information on DSI's sales representatives in Texas, public documents show that DSC was also directly involved in research, development, and testing of ENHERTU® in Texas. For example, DSC sponsored a clinical trial with investigators at M.D. Anderson Cancer Center, and jointly presented findings at a conference in San Antonio.[9] Having been presented with this fact, DSC now offers to perform a limited search for documents regarding this trial on a "sufficient to show" basis. But it should produce all such documents, and not limit its search to an example that Seagen first identified.

**Document Topic No. 6 (corresponding to 30(6)(b) Topic No. 8):** All documents relating to DSC's assertion, in its Motion to Transfer Under 28 U.S.C. § 1404 to the District of Delaware (ECF No. 24 at 3), that: "In 2015, Daiichi Sankyo Japan terminated the Agreement and continued with its own independent ADC research, which led to the discovery of Enhertu®."

---

[8] Enhertu FDA Label, *available at* https://www.accessdata.fda.gov/drugsatfda_docs/label/2019/761139s000lbl.pdf.
[9] *See* supra fn. 3, and S. Modi *et al.*, "Trastuzumab deruxtecan (DS-8201a) in subjects with HER2-low expressing breast cancer: Updated results of a large phase 1 study, Poster # P6-17-02 – San Antonio Breast Cancer Symposium® – December 4–8, 2018", *available at* https://sabcs18.posterview.com/nosl/p/P6-17-02.

6

DSC cannot contest that this topic is relevant because it raised the termination of a collaboration agreement with Seagen and its purported independent development in its own motion. (Dkt. 24 at 3.) The discovery Seagen seeks will show that the sources of proof regarding these contested issues are not located in Delaware, but instead can be found in Japan (where DSC is based) and the Seattle area (where Seagen is based), making Delaware no more convenient than Texas. Further, these documents are directly relevant to the merits of this case, and there is no reason to postpone their production. *See* E.D. Tex. Civ. L.R. CV-26(a) ("a party is not excused from responding to discovery because there are pending motions to dismiss, to remand, or to change venue").

**Deposition Topic No. 7:** The facts and bases for such facts set forth in the January 5, 2021 Declarations of Hiroaki Miki, Daniel Switzer, Kevin Smith, and Albert Bucci, submitted with DSC's Motion to Transfer Under 28 U.S.C. § 1404 to the District of Delaware (ECF No. 24).

The declarations DSC submitted in support of its motions relate to the commercialization, marketing, distribution, and sale of ENHERTU® in the U.S., as well as the location of relevant documents and employees involved. Yet DSC only offers that its 30(b)(6) representative will testify as to the Miki declaration. Given DSC is relying on these declarants and elicited their testimony, Seagen ought to be able to examine DSC's representative on the assertions made in all of these declarations.

## IV.    CONCLUSION

Seagen has demonstrated that the requested discovery is relevant. DSC's objections, on the other hand, are unclear and improper. Hence, the Court should compel DSC's compliance with Seagen's requests. If the Court provides that DSC may respond to Seagen's document topics and interrogatories by some date after the February 26, 2021 deadline previously set (*see* Dkt. 50), it should extend the deadline for depositions accordingly.

Dated: February 19, 2021 By: */s/ Michael A. Jacobs w/permission Andrea L. Fair*

Michael A. Jacobs
MJacobs@mofo.com
Matthew A. Chivvis
MChivvis@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: 415.268.7000
Facsimile:  415.268.7522

Bryan Wilson
BWilson@mofo.com
Pieter S. de Ganon
PdeGanon@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California  94304-1018
Telephone: 650.813.5600
Facsimile:  650.494.0792

Melissa R. Smith
Texas State Bar No.  24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone:  903.934.8450
Facsimile:   903.934.9257

*Of Counsel:*

T. John Ward, Jr.
Texas State Bar No.  00794818
jw@wsfirm.com
Charles Everingham IV
Texas State Bar No.  00787447
ce@wsfirm.com
Andrea L. Fair
Texas State Bar No.  24078488
andrea@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone:  903.757.6400
Facsimile:   903.757.2323
*Attorneys for Plaintiff Seagen Inc.*

**CERTIFICATE OF CONFERENCE**

I hereby certify that the parties have complied with the meet and confer requirement in Local Rule CV-7(h).  On February 12 and 19, 2021, "meet and confer" telephonic conferences of local counsel and lead counsel occurred concerning the relief sought in this motion.  The attendees who participated in these telephonic conferences include Michael A. Jacobs (lead attorney for Plaintiff Seagen Inc.), Andrea Fair (local counsel for Plaintiff Seagen Inc.), Preston K. Ratliff II (lead counsel for Defendant Daiichi Sankyo Co. Ltd), Blake Thompson (local counsel for Defendant Daiichi Sankyo Co. Ltd who attended the February 12, 2021 conferences), and Deron R. Dacus (local counsel for Defendant Daiichi Sankyo Co. Ltd who attended the February 19, 2021 conference), along with other counsel.  During the conferences, the relief sought in this motion was fully discussed by all parties.  As of February 19, 2021, Defendant has not agreed to the relief sought in this motion.  Accordingly, Plaintiff is filing this motion seeking said relief.

*/s/ Andrea L. Fair*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 19th day of February, 2021.

*/s/ Andrea L. Fair*