# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| SEAGEN INC., <br><br>    Plaintiff, <br><br>  v. <br><br> DAIICHI SANKYO CO., LTD., <br><br>    Defendant, <br><br> ASTRAZENECA PHARMACEUTICALS LP, and ASTRAZENECA UK LTD, <br><br>    Intervenor-Defendants. | Civil Action No.  2:20-CV-00337-JRG <br><br> **FILED UNDER SEAL** |

**SEAGEN'S RENEWED MOTION FOR SANCTIONS**

I.  INTRODUCTION

Seagen renews its motion for sanctions for DSC's discovery malfeasance. DSC has repeatedly flouted its obligation to produce relevant documents pursuant to this Court's orders and misrepresented its discovery compliance to Seagen and the Court. At the outset of this case, Seagen requested from DSC documents reflecting the development of the accused product, Enhertu (also known as DS-8201 ▓▓▓▓▓▓). DSC refused to produce them. Seagen was thus forced to seek the Court's assistance to obtain these relevant documents, not once, not twice, but three separate times. Seagen only withdrew its first two motions upon DSC's representations to the Court, in April 2021, that it would search for and produce these documents, and in November 2021, that it had searched for them and its production was complete. As we now know, both representations were false.

After the close of fact discovery, DSC scientist Dr. Koji Morita revealed in his Court-ordered deposition that lab notebooks—containing the very information Seagen had sought—exist and had not been produced. Seagen immediately requested them, but DSC still did not produce them. Only after Seagen filed its third motion to compel did DSC finally produce these documents—documents which it should have produced a year ago. What motivation would DSC have to withhold these documents? The answer is clear: the notebooks show that DSC scientists directly referenced Seagen technology in the development of the accused product. DSC's failure to comply with its discovery obligations and its misrepresentations are blatant violations of this Court's rules and put its compliance with the discovery process more generally into doubt. This conduct should not go unpunished.

II.  BACKGROUND

After nearly a year of extensive motion practice, DSC produced, from December 16 to 19, eleven laboratory notebooks, including those belonging to DSC scientists Drs. Hideki Miyazaki, Yuji Kasuya, and Koji Morita. Drs. Miyazaki, Kasuya, and Morita are named inventors on the

patents that DSC acknowledges cover the accused product, Enhertu® or DS-8201. (*See* Ex. A at 4 [Lambert Rebuttal Report].) Their notebooks describe ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ The notebooks confirm

████████████████████████████████████████████████████████

██████████████████████████████████████████████ As Dr. Morita acknowledged in his deposition, ████████████████████████████

████████████████████████████████

From the outset of this case, Seagen requested all documents related to DSC's development of DS-8201, which DSC should have already been collecting pursuant to the Court's Discovery Order and Local Rule CV-26(d). (*See* Ex. A at 5 [Seagen Disc. Letter].) Seagen also specifically requested development documents that refer to Seagen. (*See id.*) DSC refused to produce them. On April 16, 2021, Seagen filed a motion to compel their production. (Dkt. 79.) DSC negotiated for the withdrawal of the motion, agreeing in a Court filing to search for and produce documents "that reflect the research and development work for Enhertu, which includes the linker used in Enhertu." (Dkt. 92.) DSC also agreed to search for and produce "documents created through December 2015 from Toshinori Agatsuma, Toshiaki Ohtsuka, Kimihisa Ichikawa, *Koji Morita, Hideki Miyazaki*, Yuji Suzuki, and Toshimasa Jindo that reflect their work, if any, relating to ADC linkers" and documents that "refer to Seattle Genetics, SGI, Seagen, *or any other name used within Daiichi Sankyo Japan to refer to Seagen* or any of Seagen's ADC research and development work, including documents that refer to information obtained from Seagen." (*Id.* (emphasis added).)

---

[1] ████████████████████████████████████████████████████████████████████████████████████████

Seagen's withdrawal of its April 16 motion and this Court's Order granting that withdrawal were predicated on DSC's compliance with its commitment to produce these documents. (*See* Dkt. 92; Dkt. 93.) But despite months of delays and substantial further meet and confer, DSC continued to withhold relevant documents responsive to these requests. Seagen renewed its motion to compel on October 29, 2021. (Dkt. 187.) DSC then produced some documents Seagen identified by name, but a gap in the production record from 2009 through January 2012 still remained. Seagen suspected there were unproduced documents from this timeframe. DSC's lead counsel, however, certified in writing to Seagen and the Court that DSC had "searched the files of Drs. Masuda, Morita, Miyazaki, and Kasuya, and produced all responsive documents to Seagen's revised requests, including to the extent any such documents exist: (1) documents that show how DSC developed its protocols for conjugating the DS-8201 linker to cysteine amino acids and (2) how it selected the components in the DS-8201 linker from December 2009 until January 2012." (*See* Ex. A at 5 [DSC Email]; Dkt. 225.) Based on this certification, Seagen withdrew its renewed motion.

DSC's certification was false, as revealed in the Court-ordered deposition of Dr. Morita. (Dkt. 230.) Contrary to DSC's narrative (Dkt. 198 at 1), Dr. Morita testified ███████████ ████████████████████████████████████████████ He further testified that, ████████ ████████████████████████████████████████████ ████████ He explained that ███████████████████████████████ ████████████████████████████████

All of these notebooks fell within the gap period and had not been produced. Seagen immediately requested them from DSC and was rebuffed. (Dkt. 234 at Ex. B.) Thus, Seagen was forced to again seek the Court's assistance in compelling the production of these documents. DSC

3

sf-4662792

continued to withhold them until the day of the Court's scheduled hearing.  (Dkt. 245.)  Why?

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████  As noted above, ████████████████████████

████████████████████████████████████████

The Court ordered a further deposition of Dr. Morita.[2]  (Dkt. 251.)  ████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████)

### III.    ARGUMENT

Rule 37 permits a court to sanction a party that "fails to obey an order to provide or permit discovery."  Fed. R. Civ. P. 37(b)(2)(A).  Sanctions "must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent'."  *Pers. Audio, LLC v. Apple, Inc.*, No. 9:09CV111, 2011 WL 6148587, at *2, 6 (E.D. Tex. June 16, 2011) ("While a court must scrupulously avoid abusive sanctions, when a pattern of obstructionist conduct emerges the court

---

[2] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

should not hesitate to act.") (cleaned up).  Rule 37 requires an award of fees absent a showing that the party's position was "substantially justified."  Fed. R. Civ. P. 37(b)(2)(C).  Rule 26 provides that a court *must* sanction party if it provides a false certification.  Fed. R. Civ. P. 26(g)(3).  This Court also has inherent authority to sanction a party for failing to follow its orders.  *Ceats, Inc. v. TicketNetwork, Inc.*, No. 2:15-CV-01470-JRG, 2021 WL 3738847, at *2 (E.D. Tex. Aug. 24, 2021) ("The Court may use its inherent authority to sanction conduct that is 'in direct defiance of the sanctioning court' or constitutes 'disobedience to the orders of the Judiciary'.").

DSC's failure to produce the lab notebooks of Drs. Miyazaki and Morita violated this Court's Discovery Order.  That Order mandates that all parties "produce or permit the inspection of all documents, electronically stored information, and tangible things in the possession, custody, or control of the party that are relevant to the pleaded claims or defenses involved in this action." (Dkt. 51.) ██████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████  Thus, there is no doubt that the notebooks are relevant and should have been produced, even without a request from Seagen.[3]  *See Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456-JRG, 2018 WL 4620634, at *2 (E.D. Tex. Apr. 27, 2018); *ICON Health & Fitness, Inc. v. Horizon Fitness, Inc.*, No. 5:08CV26, 2009 WL 10677745, at *3 (E.D. Tex. Mar. 16, 2009) (finding "research and development documents relevant").

---

[3] The lab notebooks are relevant for other reasons.  They directly rebut DSC's narrative that Dr. Naito was the only scientist responsible for the development of DS-8201 and DSC's defense that it had independently developed its ADCs without relying on Seagen.  DSC's copying of Seagen's technology is also relevant to Seagen's claims of willful infringement.  *See, e.g.*, *Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 112, 114 (E.D. Tex. 2017) (explaining that copying of "the ideas or design of another" is relevant to willfulness and enhanced damages "regardless of when [the] patents might have issued."); *see also X-Tra Light MFG Inc. v. Acuity Brands, Inc.*, No. CIVA H-04-1413, 2007 WL 7117888, at *3 (S.D. Tex. Feb. 13, 2007) (admitting evidence of pre-issuance copying because "copying is relevant to the willfulness determination.").

5

DSC also failed to abide by its commitment to search for and produce these documents that predicated the Court-ordered withdrawal of Seagen's first motion to compel. That makes *two* Court orders DSC violated. But DSC's misconduct continued. It certified to Seagen and this Court that it had searched the files of Drs. Morita and Miyazaki and produced "all responsive documents . . . that show how DSC developed its protocols for conjugating the DS-8201 linker to cysteine amino acid." (*see* Ex. A at 5 [DSC Email].) At that time DSC may have searched for responsive documents, but it certainly had not produced them. This false certification alone warrants sanctions.[4] *Weatherford Tech. Holdings,* 2018 WL 4620634, at *2-*3 (granting sanctions against Tesco for misrepresenting that "all documents responsive to the document request and that answered Weatherford's interrogatories have been produced") (cleaned up); *see also Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, 203 F. Supp. 3d 755, 764 (E.D. Tex. 2016). And the pattern of obstruction did not end there, as Seagen had to file a *third* motion to compel before DSC finally produced the notebooks. DSC's misconduct persisted even through the deposition of Dr. Morita last week.[5]

There is no excuse for how this all unfolded. Seagen suspected documents like these

---

[4] DSC's counsel may claim that they did not know these lab notebooks existed before Dr. Morita's deposition. ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ *v. Admin. Rev. Bd.*, 423 F.3d 483, 497 (5th Cir. 2005) ("[A] party may not use privileged information both offensively and defensively at the same time.") Moreover, any such claim should be greeted with suspicion. Drs. Morita and Miyazaki are inventors on patents relating to DS-8201 and individuals from whom Seagen specifically requested documents. ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ Even if DSC's counsel somehow missed these notebooks, the discovery obligation is *DSC's* and DSC should have provided these documents to its counsel for production in the first place. *See, e.g.*, *Cummins-Allison Corp. v. Glory Ltd.*, No. 2:03-CV-358 (TJW), 2006 WL 8441019, at *1 (E.D. Tex. Jan. 23, 2006) ("Glory's response is full of representations that Glory's *counsel* was not purposefully delinquent and the Court accepts those statements as true. However, Glory itself has offered no explanation for not providing these documents earlier.") (emphasis in original).

[5] ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ But as Seagen reminded DSC, the date of this awareness, and whether DSC and its counsel were aware are legitimate lines of inquiry. *In re Norplant Contraceptive Prods. Liab. Litig.*, No. MDL 1038, 1996 WL 42053, at *3 (E.D. Tex. Jan. 19, 1996) ("When a privilege is claimed, the witness should nevertheless answer questions relevant to the existent, extent, or waiver of the privilege, such as the date of a communication, who made the statement, to whom and in whose presence the statement was made, and the identity of other persons to whom the contents of the statement have been disclosed."); *see also Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, No. 17 C 1973, 2019 WL 2774126, at *2 (N.D. Ill. July 2, 2019) ("Courts have consistently held that the facts surrounding attorney-client communications, including the fact that they occurred, their dates, topics and subject matter are discoverable and not privileged.").

existed, and requested them early in this case, but was only able to obtain them after repeated motion practice, well after the fact discovery deadline. The Court should not let this type of misconduct go unpunished. *Pers. Audio,* 2011 WL 6148587, at *6 (Sanctions are proper where a party has engaged "a pattern of failing to meet its obligations to search its records and files and question those employees known to have information); *see also Cummins-Allison Corp.*, 2006 WL 8441019, at *1 (sanction appropriate where relevant documents were produced "nearly two months after the discovery deadline," as such delay "indicates a willing and purposeful violation of this Court's Discovery Orders and the Patent Rules.").

While Rule 37 requires payment of fees and costs to Seagen under these circumstances, DSC's repeated violations warrant more significant sanctions. Here, a jury instruction on DSC's discovery failures is appropriate. *z4 Techs., Inc. v. Microsoft Corp.*, No. 6:06-CV-142, 2006 WL 2401099, at *18 (E.D. Tex. Aug. 18, 2006), *aff'd,* 507 F.3d 1340 (Fed. Cir. 2007) ("The Court properly instructed the jury . . . as a sanction against [defendant] for not producing [an] email, which should have been produced much earlier."). And because neither Seagen nor this Court can have confidence that DSC has not withheld other documents that refer to Seagen, the Court should also probe DSC's discovery compliance. Hence, Seagen requests the following sanctions:

1) an instruction that, in the discovery phase of the case, DSC withheld evidence on the use of Seagen information in the development of the accused product, and that the jury may consider this in determining whether the accused product infringes, the value of the invention, and whether DSC knew it would infringe;[6]

2) testimony before the Court from a DSC representative to explain DSC's search and review process for relevant documents responsive to Seagen's requests, including when DSC first became aware of the notebooks and whether DSC has now produced all relevant documents reflecting reference to or use of Seagen technology in its ADC linker development; and

3) Seagen's fees and costs for its three motions compelling production of linker development documents, the motion to compel the deposition of Dr. Morita, the depositions of Dr. Morita, and this motion.

---

[6] Alternatively, the Court could permit Seagen to inform the jury of DSC's withholding of the laboratory notebooks at trial. *Pers. Audio,* 2011 WL 6148587, at *7.

7

sf-4662792

Dated: January 21, 2022

By: */s/ Michael A. Jacobs*

Michael A. Jacobs
MJacobs@mofo.com
Matthew A. Chivvis
MChivvis@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: 415.268.7000
Facsimile: 415.268.7522

Bryan Wilson
BWilson@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: 650.813.5600
Facsimile: 650.494.0792

Melissa R. Smith
Texas State Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: 903.934.8450
Facsimile: 903.934.9257

*Of Counsel:*

T. John Ward, Jr.
Texas State Bar No. 00794818
jw@wsfirm.com
Charles Everingham IV
Texas State Bar No. 00787447
ce@wsfirm.com
Andrea L. Fair
Texas State Bar No. 24078488
andrea@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone: 903.757.6400
Facsimile: 903.757.2323
*Attorneys for Plaintiff Seagen Inc.*

8

sf-4662792

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 21st day of January, 2022.

                                                       */s/ Melissa R. Smith*

## **CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

                                                      /s/ *Melissa R. Smith*