# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| SEAGEN INC., <br><br> *Plaintiff,* <br><br> v. <br><br> DAIICHI SANKYO CO., LTD., <br><br> *Defendant*, <br><br> ASTRAZENECA PHARMACEUTICALS LP, and ASTRAZENECA UK LTD, <br><br> *Intervenor-Defendants.* | Civil Action No. 2:20-CV-00337-JRG |

**SEAGEN'S REPLY IN SUPPORT OF SEAGEN'S MOTION FOR LEAVE TO USE CERTAIN DOCUMENTS PRODUCED BY DAIICHI SANKYO CO., LTD IN CO-PENDING PROCEEDING**

sf-4681967

## I.     INTRODUCTION

Seagen has fully complied with the Discovery Order and the Protective Order in this case. In its motion to reopen the arbitration record, Seagen described DSC-produced documents and testimony at a high level of generality, and only disclosed a more complete picture of the evidence to the arbitrator *after* DSC itself introduced that evidence through its briefing. Instead, it is *DSC* that has abused the discovery process—both in this case and in the parties' pending arbitration—by withholding documents from discovery and attempting to run out the clock in both proceedings. DSC cannot now claim prejudice when the delay occasioned by reopening the arbitration record and the parties' related expenses were a result of DSC's own misconduct.

## II.    BACKGROUND

On January 3, Seagen informed DSC that Seagen would seek to reopen the arbitration record to introduce the lab notebooks that DSC produced in this case in late December 2021, and asked DSC to confirm whether it would agree to cross-use of the produced documents for purposes of such a motion.[1] (Ex. 1.) Seagen requested a response as soon as possible in light of the arbitrator's award deadline of January 31, but DSC did not respond. In a meet and confer on January 5, Seagen *again* asked DSC to confirm as soon as possible its position on use of the materials. DSC responded only that it too would seek to introduce new evidence in the arbitration if the record was reopened. DSC would not commit to a date to respond to Seagen on cross-use. (Ex. 2.) Due to the impending award deadline, Seagen could not wait for DSC's response and filed its motion to reopen with an offer of proof on January 6.[2] Because the parties

---

[1] As explained in Seagen's January 14 motion for leave (Dkt. 262), these notebooks are relevant to Seagen's arbitration claims and should have been produced in that proceeding.

[2] In the motion to reopen, Seagen asked the arbitrator to order DSC to produce the requested documents in the arbitration, and explained that Seagen would also seek leave from this Court to use the produced documents if the arbitrator did not order such production. Pursuant to the cross-use provision in the Discovery Order (Dkt. 51), on January 7, Seagen sought DSC's agreement to file a joint stipulation permitting the cross-use of documents produced in this case in the arbitration. (Ex. 3.) Due to DSC's stonewalling, the parties were unable to meet and confer on the issue until January 12. During the meet and confer, DSC suggested that it might be open to filing a

had not agreed to the cross-use of documents and Seagen had not yet obtained leave from this Court to use DSC-produced documents in the arbitration, Seagen's motion did not include any excerpts of Dr. Morita's deposition or other litigation documents. Instead, Seagen's offer of proof described the lab notebooks at a high level of generality and referred to information that had already been presented publicly in this Court's December 20 hearing, where DSC had confirmed it would not seek sealing or redactions.

DSC opposed Seagen's motion to reopen, but again noted that it too would seek to introduce documents from this litigation if the hearing record were reopened. In its opposition, DSC also attached excerpts of Dr. Morita's deposition transcript and select pages from Seagen and DSC's expert reports from this case without prior notice to Seagen or leave from this Court. In response, Seagen submitted other excerpts from Dr. Morita's testimony as well as missing pages from the supplemental expert report of Dr. Bertozzi (Seagen's expert) for completeness.

The arbitrator held a hearing on the motion to reopen on January 19. During the hearing, Seagen referred only to information that had been previously submitted with the parties' papers. On January 25, the arbitrator granted Seagen's motion to reopen, 

(Dkt. 281, Ex. A at 5-6.) The arbitrator concluded that the evidence in question should be made part of the record so the arbitrator could

---

joint stipulation. Following the meet and confer, Seagen immediately provided DSC with a draft joint motion on the cross-use of documents, requesting approval to file as soon as possible in light of the arbitrator's January 31 award deadline. DSC failed to respond within the requested time, so Seagen filed its motion for leave to use certain DSC-produced documents on January 14.

consider it, and directed the parties to confer on a schedule for the reopened hearing. (*Id.*)

On January 28, Seagen and DSC met and conferred to address the arbitrator's order. Prior to the discussion, DSC sent a list of Seagen-produced documents from this case to introduce into the arbitration record and requested Seagen's approval to present those documents to the arbitrator. Seagen proposed that the parties file a stipulation permitting the use of certain documents produced in this case in the arbitration and offered to withdraw its motion for leave to use DSC-produced documents as moot if the parties could come to such an agreement. DSC refused and instead filed its opposition. (Dkt. 278.) DSC has since notified Seagen that it will be seeking leave from this Court to introduce its list of Seagen-produced documents into the arbitration record. Seagen responded that it likely would not oppose that request. (Ex. 4.)

**III.   ARGUMENT**

    **A.  Seagen Did Not Violate the Discovery Order or the Protective Order**

In its motion to reopen and the accompanying offer of proof, Seagen provided only high-level descriptions and Bates numbers of the requested documents, and cited facts already discussed by both parties in open court. Such reference revealed no confidential content and cannot be considered a violation of the Protective Order. *See Milwaukee Elec. Tool Corp. v. Snap-on Inc.*, No. 14-CV-1296-JPS, 2016 WL 1719657, at *5 (E.D. Wis. Mar. 16, 2016) (referencing confidential materials from a different proceeding in discovery requests did not violate the other proceeding's protective order). DSC argues that *Milwaukee* is distinguishable because Seagen used direct quotes from Dr. Morita's deposition testimony in Seagen's reply letter to the arbitrator and in its presentation during hearing on the motion to reopen. But DSC had first provided excerpts of Dr. Morita's testimony as well as pages from Dr. Bertozzi's expert report to the arbitrator in its opposition letter. Seagen quoted from Dr. Morita's testimony only *after* DSC opened the door for the parties to use the materials in the arbitration, and only to

3

provide context for DSC's misleading excerpts.

DSC offers no relevant authority to support its argument that Seagen violated the Protective Order. Unlike the parties in *Jazz*, for example, whose protective order included no instructions regarding the use of produced information in another proceeding,[3] the Discovery Order in this case specifically contemplates the use of information from produced documents to inform other proceedings. (Dkt. 51.) *Jazz* is distinguishable on another basis. There, a party sought *new* discovery in a PTAB proceeding involving third parties *after* the information was revealed in a court proceeding. *See Jazz Pharms.*, 2016 WL 11480203, at *1–2. Here, Seagen is not seeking new discovery in a proceeding involving other parties based on evidence produced in this case. Seagen requested such evidence in the arbitration *before* discovery even opened in this action, and the arbitrator confirmed that DSC should have produced these documents then. (Dkt. 281, Ex. A.) DSC should not be permitted to benefit from its misconduct in the arbitration by hiding behind the Protective Order in this case.[4]

DSC's other cited cases are similarly inapposite. In *Hydro-Blok*, the district court found that a party violated the protective order by citing confidential information produced in the case in a publicly-filed complaint against a third party. *See Hydro-Blok USA LLC v. Wedi Corp.*, No. C15-671 TSZ, 2017 WL 6513697, at *1–2 (W.D. Wash. Dec. 20, 2017); *see also Wolters Kluwer Fin. Servs. Inc. v. Scivantage,* No. 07 CV 2352 (HB), 2007 WL 1498114, at *7-8 (S.D.N.Y. May 23, 2007) (violation to use information in lawsuit involving unrelated party). Seagen is not relying on DSC-produced documents to advance new allegations against a third

---

[3] *See* Discovery Confidentiality Order, *Jazz Pharms., Inc. v. Amneal Pharms. LLC*, C.A. No. 13-391(ES) (JAP), 2016 WL 11480203, at *2 (D.N.J. Jan. 22, 2016), Dkt. 48.

[4] The court in *Jazz* also recognized that it would be a serious problem if a protective order in one proceeding "prohibit[s] the legitimate use of information in other proceedings (e.g., to establish that a party has wrongfully failed to produce relevant documents, or for potentially for other legitimate purposes)," and ordered the parties to try to amend the protective order to allow for the limited use of produced information in the PTAB proceeding. *Jazz Pharms.*, 2016 WL 11480203, at *4.

party or even new claims against DSC. The documents will become of record in a private arbitration between Seagen and DSC—a proceeding that is also governed by a protective order that protects the parties' confidential information.

### B. DSC Suffers No Prejudice From the Use of Produced Documents in the Arbitration

DSC's claim that Seagen fabricated discovery disputes in this case to obtain documents for use in the arbitration is meritless. As Seagen explained in its *three* motions to compel and renewed motion for sanctions (Dkts. 79, 187, 234, 267), the lab notebooks

DSC's contention that the notebooks are "irrelevant and immaterial" in the arbitration is also false—the arbitrator found that the documents are relevant to the arbitration and should have been produced,

(Dkt. 281, Ex. A.) DSC's assertion that the evidence reflects its own confidential information also lacks support.

. Tellingly, DSC's opposition identifies none of its own confidential information that Seagen allegedly misused.

In light of DSC's own misconduct in withholding relevant, responsive documents in two separate proceedings despite their responsiveness to Seagen's requests, DSC cannot complain that reopening the arbitration hearing is somehow prejudicial because of the "additional Arbitration proceedings that will now occur." (Opp. at 5.) The fault for any additional cost or expense associated with those additional proceedings lies with DSC.

5

...

███████████████████████████████████████

| | |
|---|---|
| Dated: February 2, 2022 | By: */s/ Michael A. Jacobs* |
| | Michael A. Jacobs |
| | MJacobs@mofo.com |
| | Matthew A. Chivvis |
| | MChivvis@mofo.com |
| | MORRISON & FOERSTER LLP |
| | 425 Market Street |
| | San Francisco, CA 94105 |
| | Telephone: 415.268.7000 |
| | Facsimile:  415.268.7522 |
| | |
| | Bryan Wilson |
| | BWilson@mofo.com |
| | MORRISON & FOERSTER LLP |
| | 755 Page Mill Road |
| | Palo Alto, California  94304-1018 |
| | Telephone: 650.813.5600 |
| | Facsimile:  650.494.079 |
| | |
| | Melissa R. Smith |
| | Texas State Bar No. 24001351 |
| | melissa@gillamsmithlaw.com |
| | GILLAM & SMITH, LLP |
| | 303 South Washington Avenue |
| | Marshall, Texas 75670 |
| | Telephone:  903.934.8450 |
| | Facsimile:   903.934.9257 |
| | *Of Counsel:* |
| | T. John Ward, Jr. |
| | Texas State Bar No. 00794818 |
| | jw@wsfirm.com |
| | Charles Everingham IV |
| | Texas State Bar No. 00787447 |
| | ce@wsfirm.com |
| | Andrea L. Fair |
| | Texas State Bar No. 24078488 |
| | andrea@wsfirm.com |
| | WARD, SMITH & HILL, PLLC |
| | 1507 Bill Owens Parkway |
| | Longview, Texas 75604 |
| | Telephone:  903.757.6400 |
| | Facsimile:   903.757.2323 |

*Attorneys for Plaintiff Seagen Inc.*

sf-4681967

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on February 2, 2022.

                                                                                              */s/ Melissa R. Smith*

sf-4681967