███████████████████████████████████████

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SEAGEN INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:20-cv-00337-JRG |
| | ) |
| DAIICHI SANKYO CO., LTD., | ) |
| | ) ████████████████ |
| Defendant, and | ) |
| | ) |
| ASTRAZENECA PHARMACEUTICALS | ) |
| LP and ASTRAZENECA UK LTD., | ) |
| | ) |
| Intervenor-Defendants. | ) |

**DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION TO
SEAGEN'S MOTION TO USE DISCOVERY FROM THIS CASE
TO PRESENT IN A PREVIOUSLY CLOSED PRIVATE ARBITRATION**

## I. INTRODUCTION

Seagen has intentionally abused the protections and processes afforded by the Court to seek and obtain discovery in this action for use in a private arbitration (the "Arbitration") between Seagen and Daiichi Sankyo Japan. Specifically, while the Arbitration closed over four months ago and the arbitrator's final decision had been ▮▮▮▮▮▮▮▮▮▮, Seagen went to the arbitrator seeking to delay that final decision and reopen the Arbitration proceedings based on supposed new evidence it tactically sought in this action.[1] Rather than seek leave of the Court to use discovery materials from this action in the Arbitration, as required by the Court's Discovery Order and Protective Order in this action, Seagen proceeded to use discovery from this case extensively in its efforts to reopen the Arbitration proceeding. For example, in support of its motion to reopen the Arbitration, Seagen unabashedly quoted, displayed, described, and referenced the contents of discovery materials produced by Daiichi Sankyo Japan in this action without having obtained the requisite leave of Court.

Confusingly, Seagen now comes to the Court seeking permission after-the-fact to do what it has already done, *i.e.*, use discovery for another proceeding. The Court should not endorse Seagen's blatant violation of this Court's Discovery Order and Protective Order as well as its abuse of the process of this Court. To grant Seagen leave, *after* it has already used the materials in another forum and violated the Discovery Order and Protective Order provisions that required pre-use leave of Court, would render the cross-use provisions of the Court's orders meaningless and condone and encourage litigants to flout this Court's procedures, rules, and orders. Because Seagen already violated this Court's procedures, the Court should take whatever action it deems appropriate under these egregious circumstances, including imposing sanctions against Seagen.

---

[1] At issue are four lab notebooks, emails, and parts of deposition transcripts ("Texas Discovery Material").

## II. RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

### A. Arbitration Between Seagen and Daiichi Sankyo Japan

On November 12, 2019, Seagen filed an arbitration against Daiichi Sankyo Japan regarding, among other things, patent rights to Daiichi Sankyo Japan's groundbreaking drug product, DS-8201. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓[2] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The "co-pending" Arbitration in which Seagen intends to use the Texas Discovery Material is all but completed at this point,[3] but Seagen's gambit is actively disrupting the timely resolution of that dispute.

### B. Discovery Order and Protective Order in This Lawsuit

Here, the patent-in-suit claims the overall structure or design of certain ADCs. Importantly, *none* of the Texas Discovery Material concerns the design of an ADC or anything relevant to the Asserted Claims; the lab notebooks concern ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, which are not claimed by the patent-in-suit.

From the beginning of this action, the use of discovery from this case in another proceeding was disputed between Seagen and Daiichi Sankyo Japan. Seagen sought open cross-use among all proceedings, however, the Court resolved the Parties' dispute by permitting cross-use, *but only upon obtaining leave of this Court*. (*See* Dkt. 51 (Discovery Order) at ¶ 12(b).) The Protective

---

[2] In the Arbitration, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Moreover, Daiichi Sankyo Japan's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, as demonstrated by Daiichi Sankyo Japan's expert in this action, Dr. Lambert.

[3] The Arbitration hearing was declared closed on September 1, 2021. Seagen and Daiichi Sankyo Japan agreed that the final award in the Arbitration would be due ▓▓▓▓▓▓▓▓▓▓, after which they agreed to extend it to ▓▓▓▓▓ upon the arbitrator's request.



▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Order similarly prohibits the use of any discovery materials from this case in any other proceeding without *prior leave* of this Court. (*See* Dkt. 248 at ¶ 8.)

### C. Seagen's Motions in the Arbitration and This Case

On January 6, Seagen filed a motion in the Arbitration to reopen the Arbitration hearing to introduce the Texas Discovery Material. Seagen's motion to reopen repeatedly detailed and directly referenced the contents of the Texas Discovery Material. (*See, e.g.*, Ex. A.) On January 11, Daiichi Sankyo Japan filed in the Arbitration its opposition to Seagen's motion to reopen. Because Seagen's motion had selectively quoted and mischaracterized the Texas Discovery Material, Daiichi Sankyo Japan's opposition thereto, out of necessity, cited and referred to ***Daiichi Sankyo Japan's own confidential material*** in order to correct Seagen's mischaracterizations.

On January 12, Seagen in the Arbitration filed an unsolicited reply in support of its motion to reopen. In that reply, Seagen again quoted, detailed, and referenced the content of Daiichi Sankyo Japan's confidential-designated discovery material from this lawsuit—including going so far as to include seven pages of excerpts from Dr. Morita's deposition transcript. (*See* Ex. B.)

On January 14, Seagen filed the instant Motion after Daiichi Sankyo Japan's repeated communications regarding Seagen's violation of the Court's Orders. (*See* Ex. E.)

On January 19, the arbitrator heard oral argument on Seagen's motion to reopen. During that oral argument, Seagen continued to quote and refer to the Texas Discovery Material, even displaying demonstrative slides displaying quotations from Dr. Morita's deposition transcript (discovery obtained solely from this action).[4] (*See* Ex. D.)

---

[4] The arbitrator raised the concern and questioned whether he was permitted to see the discovery materials that Seagen was displaying and discussing, asking ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at 18:6-11.) Amazingly, Seagen's counsel went further and proposed an end-run around this Court and its orders: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

Unfortunately, Seagen's gambit reopened the Arbitration. On January 25, 2022, the arbitrator reopened the hearing while acknowledging Daiichi Sankyo Japan's request that if proceedings are reopened, then it must be permitted to present additional evidence as well; recognizing additional arbitration hearing dates will be necessary; and directing the parties to meet and confer about a path forward. Notably, as to Daiichi Sankyo Japan's argument that Seagen was mischaracterizing the supposed "new" evidence from this case, the arbitrator ruled that he could not make such a determination without reopening the proceedings.

### III. Argument

#### A. Seagen's Actions Are Causing Undue Prejudice to Daiichi Sankyo Japan

Contrary to Seagen's perfunctory argument, (Mot. 4), Daiichi Sankyo Japan faces, and indeed is already incurring, substantial undue prejudice if the requested leave is granted. Daiichi Sankyo Japan proceeded with discovery in this action relying on the procedures and protections implemented in the Court's Discovery Order and Protective Order. Simply allowing Seagen leave after it has already used this action's discovery material in another proceeding would set a dangerous precedent for further misuse and misconduct by Seagen.[5] It would also set a dangerous precedent for litigants in this Court, who cannot rely on the protections of the Court's protective orders if opposing parties are permitted to breach those orders and receive forgiveness thereafter.

Moreover, Seagen continues to propagate a false narrative about the discovery materials in

---

▮▮▮▮▮▮▮▮▮▮ (*Id.* at 18:18-19:2.)

[5] Additionally, Seagen has now leveraged the Texas Discovery Material, without leave of this Court, to reopen the arbitration hearing, thus eliminating the possibility of Daiichi Sankyo Japan and Seagen to obtain a final award by the previously agreed-upon deadline of ▮▮▮▮▮▮. The result is additional discovery, evidence submission, and arbitration hearing in the coming months, which will consume substantial time and resources during the period that the Parties are otherwise preparing for trial in this action. This threatens to affect the procedural schedule of this case as it heads to trial, contrary to Seagen's suggestion otherwise.

question, which is further unduly prejudicing Daiichi Sankyo Japan. Seagen's Motion avoids discussing the nature of the Texas Discovery Material which it seeks leave to use in the Arbitration. Make no mistake: the materials are irrelevant and immaterial in that proceeding as well as this one.[6] Seagen's hope is to distort and confuse the factual record in the Arbitration to make up for the absence of support for its Arbitration claims.[7]

Meanwhile, Seagen's other arguments that Daiichi Sankyo Japan would not be prejudiced are unconvincing. (Mot. 4.) Seagen's emphasis that the documents will remain subject to the protective order in the Arbitration is cold comfort, given that Seagen has already flouted the procedures and protections of this Court's Discovery Order and Protective Order to try to gain an advantage (and if Seagen is granted the requested leave even after such violations, it will only be more emboldened to breach its obligations under this Court's orders). And Seagen's claim that its request would not "require any additional effort or expense" is plainly false, given the additional Arbitration proceedings that will now occur.

### B. Seagen Repeatedly Violated the Discovery Order and Protective Order, So Sanctions Should Be Imposed Against It

Under the Discovery Order and Protective Order in this case, Seagen was required to obtain leave of this Court *before* using discovery materials from this case in the Arbitration. (Dkt. 51 at

---

[6] Seagen insists that they represent some "smoking gun" because they ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Indeed, the material in question is cumulative of other discovery in the Arbitration, as it ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)

[7] Indeed, Seagen is already manufacturing impediments to resolution of the Arbitration; in response to Daiichi Sankyo Japan's explanation that the Texas Discovery Material is cumulative and not relevant, the arbitrator in his order granting the motion to reopen the Arbitration noting that he cannot make that determination unless he reopens the hearing and receives and evaluates the evidence. Seagen has thus bootstrapped itself into delaying resolution of the Arbitration: it mischaracterized the Texas Discovery Material to manufacture a basis for reopening, and the arbitrator believes he must reopen in order to determine whether Seagen mischaracterized the evidence. This gamesmanship began with and is being perpetrated by Seagen's violation of this Court's orders and intentional use of this Court to seek discovery for the Arbitration, which should not be condoned.

¶ 12(b); Dkt. 248 at ¶ 8.) Indeed, Seagen concedes this point. (Mot. 1-2.) Yet, ignoring these requirements, Seagen used Daiichi Sankyo Japan's discovery materials in the Arbitration without leave of this Court. For example, Seagen has repeatedly directly quoted, described, summarized, referenced, and/or attached the contents of the Texas Discovery Material. (*See, e.g.*, Ex. A; Ex. B; Ex. C; Ex. D) Seagen doing so, without leave of this Court, violates the Discovery Order and Protective Order. *See Jazz Pharms., Inc. v. Amneal Pharms. LLC*, 2016 WL 11480203, at *2-4 (D.N.J. Jan. 22, 2016) (finding use of confidential discovery materials from one proceeding to argue for additional discovery in another was a use violating a protective order); *Hydro-Blok USA LLC v. Wedi Corp.*, 2017 WL 6513697, at *2 (W.D. Wa. Dec. 20, 2017) (finding party violated protective order by basing allegations in one proceeding on confidential discovery material obtained in another proceeding); *Wolters Kluwer Fin. Servs. Inc. v. Scivantage*, 2007 WL 1498114, at *7-8 (S.D.N.Y. May 23, 2007) (similar).[8]

Seagen attempts to defend its conduct by suggesting that it provided only "high-level descriptions of the documents and testimony" to the arbitrator, citing *Milwaukee*, 2016 WL 1719657, at *5. Seagen's argument is unavailing. First, Seagen provided far more than "high-level descriptions" of Daiichi Sankyo Japan's discovery material; instead, it repeatedly provided direct quotes, displayed portions of testimony, and described in detail the contents of the Texas Discovery Material. This distinguishes Seagen's conduct from that at issue in *Milwaukee*, where the plaintiffs merely listed Bates numbers and provided a general description of the documents. *See id.* at *4. Indeed, the court in *Milwaukee* drew a distinction between "the use of knowledge regarding the existence of certain documents" (what the plaintiff did in that case) "versus the use

---

[8] In contrast to Seagen's improper conduct, now that the Arbitration is reopened, Daiichi Sankyo Japan is following the Court's orders and contacted Seagen about obtaining leave of this Court to use certain Seagen-produced materials from this lawsuit in the Arbitration *before* actually using them in the Arbitration. Seagen ignored our request.

of the confidential content within the documents" (what Seagen has done here). *Id.*

Second, the *Milwaukee* court's rationale is inapplicable here. Specifically, the court there reasoned that the purpose of the protective order was to protect against disclosure of commercial secrets and "to protect from the disclosure of confidential information—not to prevent the discovery of relevant documents" in other proceedings. *Id.* at *5. But the protective order in that case—unlike here—notably did ***not*** include express cross-use provisions prohibiting use of discovery materials in other proceedings without prior leave of court. *See* Protective Order, *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, No. 14-CV-1296-JPS (E.D. Wis. Apr. 13, 2015), Dkt. No. 23. The cross-use provision here, by contrast, confirms that one purpose of the orders is protecting against exactly what Seagen did. *See Moore v. Ford Motor Co.*, 755 F.3d 802, 806 (5th Cir. 2014) ("Analysis begins with the plain language of the Protective Orders . . .").

In sum, Seagen repeatedly violated the Court's Discovery Order and Protective Order by quoting, displaying, providing, summarizing, describing, and referencing the contents of the Texas Discovery Material.[9] The Court should not countenance Seagen's conduct and should take whatever action it deems appropriate, including imposing sanctions for Seagen's violations of the Court's orders. Fed. R. Civ. P. 37(b).

---

[9] Seagen argues Daiichi Sankyo Japan, in its opposition to Seagen's motion to reopen the Arbitration, "provid[ed] confidential information that is covered by the Protective Order in this case without first seeking leave." (Mot. at 3). However, Seagen's apparent insinuation—that Daiichi Sankyo Japan did the same thing Seagen did—is unfounded. The materials Daiichi Sankyo Japan referenced in its arbitration opposition reflect ***only Daiichi Sankyo Japan information*** and a single Seagen document that was already of record in the Arbitration. The Discovery Order and Protective Order restrict what a ***receiving*** party can do with the other party's discovery materials and do ***not*** restrict a party from using its own information. Also, Daiichi Sankyo Japan's reference to its own confidential information was necessitated by the fact that Seagen mischaracterized Daiichi Sankyo Japan's discovery material.

|  |  |
|---|---|
| Dated: January 28, 2022 | Respectfully submitted,<br><br>/s/ Preston K. Ratliff II<br><br>Deron R. Dacus<br>State Bar No. 00790553<br>The Dacus Firm, P.C.<br>821 ESE Loop 323, Suite 430<br>Tyler, Texas, 75701<br>+1 (903) 705-1117<br>+1 (903) 581-2543 facsimile<br>ddacus@dacusfirm.com<br><br>J. Mark Mann<br>State Bar No. 12926150<br>mark@themannfirm.com<br>MANN \| TINDEL \| THOMPSON<br>300 West Main Street<br>Henderson, Texas 75652<br>(903) 657-8540<br>(903) 657-6003 (fax)<br><br>*Attorneys for Defendant Daiichi Sankyo Company, Limited*<br><br>OF COUNSEL:<br><br>Preston K. Ratliff II<br>Joseph M. O'Malley, Jr.<br>Ashley N. Mays-Williams<br>Paul Hastings LLP<br>200 Park Avenue<br>New York, NY 10166<br>(212) 318-6000<br><br>Jeffrey A. Pade<br>Paul Hastings LLP<br>2050 M Street NW<br>Washington, DC 20036<br>(202) 551-1700<br><br>*Attorneys for Defendant Daiichi Sankyo Company, Limited* |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on January 28, 2022.

/s/ Preston K. Ratliff II

# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| SEAGEN INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DAIICHI SANKYO CO., LTD., | ) CASE NO. 2:20-cv-00337-JRG |
| | ) |
| Defendant, and | ) |
| | ) |
| ASTRAZENECA PHARMACEUTICALS | ) |
| LP and ASTRAZENECA UK LTD., | ) |
| | ) |
| Intervenor-Defendants. | ) |

## [PROPOSED] ORDER

The Court, having considered Plaintiff's Motion for Leave to Use Certain Documents Produced by Daiichi Sankyo Company, Limited in Co-Pending Proceeding (Dkt. No. 262), any responses, and all other things properly before it, finds that Plaintiff's Motion should be DENIED in its entirety.

_____
United States District Court Judge