███████████████████████████████

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| SEAGEN INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:20-cv-00337-JRG |
| | ) |
| DAIICHI SANKYO CO., LTD., | ) |
| | ) ███████████████ |
| Defendant, and | ) |
| | ) |
| ASTRAZENECA PHARMACEUTICALS | ) |
| LP and ASTRAZENECA UK LTD., | ) |
| | ) |
| Intervenor-Defendants. | ) |

## DAIICHI SANKYO COMPANY, LIMITED'S
## OPPOSITION TO SEAGEN'S "RENEWED" MOTION FOR SANCTIONS

Seagen seeks sanctions for moving to compel Dr. Koji Morita's deposition, a Daiichi Sankyo Japan employee that did not invent the Accused Product and admittedly had no role in the conjugation process used to make it, and for its pursuit of certain irrelevant lab notebooks that were first revealed by Dr. Morita during his deposition testimony. The ████████████ ████████████████████████████████, nor do they concern any claim limitation of the patent-in-suit. And as Seagen's own technical expert admitted, the ████████████████ ████████ of her prior analysis because they simply reflect the same experiments featured as examples in Daiichi Sankyo Japan's publicly-available patents that she previously reviewed.

In support of its "renewed" motion for sanctions, Seagen weaves a false narrative by misrepresenting the lab notebooks as some sort of "smoking gun" evidence that Daiichi Sankyo Japan allegedly withheld from discovery (it did not) to deflect from the obvious fact that Seagen's pursuit of discovery concerning conjugation methods was designed to support its tactic of reopening the Arbitration between Seagen and Daiichi Sankyo Japan. While the Arbitration involves Seagen's meritless allegation that Daiichi Sankyo Japan utilized a Seagen-proprietary ████████████, that allegation is completely irrelevant to this action where ***Seagen's patent does not claim or even disclose any*** ████████████. The reality is Daiichi Sankyo Japan has at all times acted in good faith, promptly searched for and voluntarily produced the lab notebooks despite their complete lack of relevance, and any conceivable prejudice to Seagen has been cured. Simply put, there are no manifest bad faith or bad acts by Daiichi Sankyo Japan to warrant any sanctions. Seagen's motion should be denied.

**I.      RELEVANT BACKGROUND**

The patent-in-suit claims certain chemical compositions known as antibody-drug conjugates ("ADCs") by their chemical structure. It does not claim any ADC conjugation or manufacturing process; Seagen does not—and cannot—dispute that the process for making the

ADCs is ***not*** claimed and therefore has no bearing on infringement. Daiichi Sankyo Japan produced complete discovery regarding the chemical structure and design of the antibody, linker, and drug payload of the Accused Product, including its entire biologics license application ("BLA") to the FDA, which defines every important detail for the drug product that may be sold in the United States. Despite the lack of any manufacturing process claims in the patent-in-suit, Daiichi Sankyo Japan thus produced the authoritative documents reflecting the manufacturing process for the Accused Product. (*See* Dkt. 197; Dkt. 239 at 6-7.)

Seagen seeks sanctions principally in connection with discovery regarding Daiichi Sankyo Japan scientist Dr. Morita. The Accused Product was solely conceived of and invented by Dr. Hiroyuki Naito, not Dr. Morita, an indisputable fact that repeatedly has been confirmed by Daiichi Sankyo Japan's witnesses, including Dr. Morita himself.[1] (*See, e.g.*, Ex. 1 (Morita Tr.) at 16:5-11.) Moreover, despite Seagen's continued focus on him, ███████████████████████████████████████████████████. (*See id.* at 26:4-24, 28:21-24.)

Seagen's motion is styled as a "renewed" motion, but it is not "renewed" at all. It is an attempt to further distort the facts and seek relief Seagen never previously requested and is not entitled to obtain. Were this truly a renewed motion, it would seek only fees and costs (which are not recoverable here (*see* Dkt. 239 at 6-7)), the only relief sought in the prior motion that Seagen has not obtained already. (*See* Dkt. 234 at 7.) Instead, Seagen without merit now seeks different sanctions to obscure the reality that the alleged withheld documents fail to support any assertion of wrongdoing by Daiichi Sankyo Japan, much less wrongdoing pertinent to the patent-in-suit's claims: a jury instruction that Daiichi Sankyo Japan "withheld evidence on the use of ***Seagen***

---

[1] To the extent that Drs. Morita and Miyazaki appear as inventors on Daiichi Sankyo Japan's patents, those patents disclose and cover subject matter beyond the Accused Product.

*information* in the development of the accused product," and testimony to the Court to explain Daiichi Sankyo Japan's "search and review process for relevant documents responsive to Seagen's requests, including when [Daiichi Sankyo Japan] first became aware of the notebooks and whether [Daiichi Sankyo Japan] has now produced all relevant documents reflecting reference to or use of *Seagen technology* in its ADC linker development" that is wasteful at best and severely prejudicial at worst. (Mot. 7 (emphasis added).)[2]  Seagen thus seeks to introduce instructions and evidence regarding Daiichi Sankyo Japan's process of searching for documents that ***undisputedly have been produced here***, which is improper, prejudicial, and confusing to the jury; this trial is about Seagen's patent, not document collection.

## II.   ARGUMENT

### A.   Daiichi Sankyo Japan Acted in Good Faith and Timely Produced the Lab Notebooks That Have No Bearing On Seagen's Infringement Claim



(*see infra*).  Despite the lack of relevance, Daiichi Sankyo Japan promptly proceeded to collect and produce the lab notebooks, as well as seven other irrelevant lab notebooks requested by Seagen that Dr. Morita ***did not even identify*** during his deposition.

Seagen's motion fails to explain—because it cannot—how ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ have any relevance to Seagen's patent infringement claim.  Instead, Seagen plays fast and loose in describing the patented subject matter and characterizing Seagen-confidential information to create the appearance that the lab notebooks

---

[2] Seagen notably does not define "Seagen information" or "Seagen technology," which illustrates Seagen's efforts to obscure the nature of the content of the lab notebooks, which is irrelevant to Seagen's claim in this lawsuit.  Seagen's request lacks specificity and is loaded with incorrect and unsupported conclusions about the nature of the material, which underscores the impropriety of the instruction and testimony Seagen now seeks.

██████████████████████████████████████████████████████████

are some "smoking gun" when in truth they are irrelevant here.

This patent action involves only compound claims, not method claims, meaning that the sole issue of the infringement inquiry is the structure and design of the Accused Product (the entire structure of which is, and is required to be, disclosed in Daiichi Sankyo Japan's BLA filing with the FDA). That disposes of Seagen's claim of relevance, as "the process by which a product is made is irrelevant to the question of whether that product infringes a pure apparatus claim." *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1344 (Fed. Cir. 2008).[3]

Also, Seagen has argued, and moved to compel arbitration on the grounds, that ████████ ██████████████████████████████████████████████████████████.[4] *See* Mem. Order, *Daiichi Sankyo Company, Ltd. v. Seattle Genetics, Inc.*, C.A. No. 19-2087-LPS, Dkt. 41 (D. Del. Oct. 27, 2020). Further, the ████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████. (*See* Ex. 1 (Morita Tr.) at 26:4-24, 33:1-6; Ex. 2.) *See Arthrex, Inc. v. Smith & Nephew, Inc.*, 2016 WL 11750180, at *4 (E.D. Tex. Nov. 30, 2016) (precluding evidence of non-patented feature copying to show willful infringement); *Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, No. 14-CV-6544(KAM)(GRB), 2019 WL 2330855, at *10 (E.D.N.Y. May 31, 2019).[5]

Nevertheless, Seagen repeatedly alleges that Daiichi Sankyo Japan misled Seagen and this Court with respect to its representation of discovery compliance, including through making a

---

[3] Seagen's attempt to tie the lab notebooks to the claims by pointing to the requirement to conjugate to an antibody's cysteine residue fails, as such technology was known for decades before Seagen filed its claims. Seagen's own witnesses readily agreed this idea was not Seagen's and instead was published long before Seagen even existed. (*See* Ex. 1 (Senter Tr.) at 489:9-19; Ex. 1 (Jeffrey Tr.) at 54:14-21.)

[4] Of course, the separate arbitration is precisely why Seagen has sought such broad discovery unrelated to its infringement claim here; Seagen is misusing this lawsuit and this Court's processes to obtain discovery unrelated to this suit for Seagen to use in a separate proceeding.

[5] The cases Seagen cites on this point are inapposite given that the subject matter of the lab notebooks is irrelevant to Seagen's claim and to the subject matter of the patent-in-suit.

- 4 -

██████████████████████████████████████████

purportedly false certification. That is incorrect. All representations, including the certification that Seagen raises, were and continue to be true and accurate.

Seagen's revised requests (*see* Dkt. 92) were directed to the Accused Product, *i.e.*, ENHERTU®, the commercial product version of DS-8201. ████████████████████

███████████████████████████████████t. (Ex. 2 (Morita Tr.) at 26:4-24, 33:1-6; Ex. 2.) ████████████████████████████████████

██████ (*See* Ex. 2.) In addition, ████████████████████████

████████████████████████████████████████

██████ (*See* Ex. 1 (Morita Tr.) at 26:4-24, 28:21-24, 29:12-17.) ████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████ (*See* Mot. 3, Ex. A.) ████████████████████████

████████████████████████████████████████

████████████████████████████. (*See* Dkt. 197 at 4, Ex. 1 (Row C).) Further,

████████████████████████████████████████

████████████████████████████

The notion that Daiichi Sankyo Japan should be sanctioned for producing these materials in good faith is untenable. *See Packless Metal Hose, Inc. v. Extek Energy Equipment (Zhejiang) Co.*, No. 2:09-CV-265-JRG, 2013 WL 12147764, at *1 (E.D. Tex. Mar. 25, 2013) ("[I]n light of Packless's failure to offer proof of bad faith, the Court must decline to impose sanctions.").

  **B.** **Seagen Has Not Suffered Prejudice, But Any Possible Prejudice Has Been Cured**

Seagen likewise cannot show the requisite prejudice to impose sanctions. Assuming,

*arguendo*, that the conjugation parameters in the lab notebooks were relevant to this action, although they are not, they would at most amount to duplicative evidence which does not support a finding that Seagen has been prejudiced. Even Seagen's technical expert, Dr. Bertozzi, acknowledges this, ▮▮▮▮▮▮▮▮▮▮▮▮ *match those disclosed in Daiichi Sankyo Japan's patents*.[6] (*See* Ex. 3.) That long-publicly available patent was also produced to Seagen well before the close of fact discovery. Tellingly, the lab notebooks did not change Dr. Bertozzi's analysis or conclusions; she even described the notebooks as ▮▮▮▮▮▮▮ (*Id.*)

Additionally, Seagen cannot credibly claim that it has been prejudiced to warrant sanctions. The lab notebooks were produced 19 days after Dr. Morita revealed them and Seagen requested them (as well as other notebooks). Further, Seagen had no difficulty serving a supplemental expert report on the lab notebooks, and Dr. Morita promptly sat for another deposition voluntarily. Seagen has obtained all that it sought; it suffered no prejudice and its motion thus should be denied.

    **C.**    **The Lab Notebooks Are Not Evidence of Copying and Seagen's Requested Sanctions are Inappropriate**



. Not so, and Seagen's accusation is based on selective quotation of Dr. Morita's deposition. Seagen ***omits key testimony***:

▮▮▮▮▮.[7] In fact, the cysteine conjugation referenced was practiced by Daiichi Sankyo Japan

---

[6] Dr. Morita confirmed this as well during his January 2022 deposition. (*See* Ex. 1 (Morita Tr.) at 284:16-286:13.)

[7] Generic cysteine conjugation method using an MC group is not and has never been proprietary to Seagen. To date, Seagen's witnesses have repeatedly admitted this fact.

████████████████████████████████████████

scientists well before the collaboration work with Seagen. Thus, ██████████

████████████████████████████████████████████████████████. (*See id.*)

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████ That allegation is also false. ██████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████ (*See* Ex. 1 (Morita Tr.) at 230:21-231:15; *see also* Ex. 2.)

In sum, the lab notebooks do not evidence any copying. Seagen's motion completely fails to identify what of Seagen's was supposedly copied, how it is supposedly Seagen-confidential, and ignores that the patent-in-suit fails to claim any conjugation process; ██████████

████████████████████████████████████████

██████████████████ To permit Seagen to present or instruct the jury based on these materials that Daiichi Sankyo Japan supposedly "copied," when the materials do not relate to subject matter covered by the patent-in-suit and do not actually show any copying, would be unfairly and unduly prejudicial to Daiichi Sankyo Japan. *See United States v. Dvorin*, 817 F.3d 438, 453 (5th Cir. 2016) ("Any sanction imposed should be the least severe penalty necessary to ensure compliance with the court's discovery orders."). Seagen's motion should be denied.[8]

---

[8] Seagen's additional allegations of misconduct during Dr. Morita's January 10, 2022 deposition (which again required him to endure the burdens of travel from Japan) are without merit. Seagen was not entitled to probe privileged communications between attorney and client, so Daiichi Sankyo Japan's counsel's objections and instructions not to answer based on privilege were appropriate (Seagen's references to the "sword and shield" doctrine are entirely misplaced and legally unfounded in this context). Additionally, the deposition was limited to the narrow subject of the ***contents*** of the lab notebooks, so it was appropriate for counsel to disallow testimony beyond that scope. If Seagen had a legitimate concern, it could have utilized the Court's discovery hotline, yet it did not do so.

Dated: February 4, 2022

Respectfully submitted,

/s/ *Preston K. Ratliff II*

Deron R. Dacus
State Bar No. 00790553
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas, 75701
+1 (903) 705-1117
+1 (903) 581-2543 facsimile
ddacus@dacusfirm.com

J. Mark Mann
State Bar No. 12926150
mark@themannfirm.com
MANN | TINDEL | THOMPSON
300 West Main Street
Henderson, Texas 75652
(903) 657-8540
(903) 657-6003 (fax)

*Attorneys for Defendant Daiichi Sankyo Company, Limited*

OF COUNSEL:

Preston K. Ratliff II
Joseph M. O'Malley, Jr.
Ashley N. Mays-Williams
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Jeffrey A. Pade
Paul Hastings LLP
2050 M Street NW
Washington, DC 20036
(202) 551-1700

*Attorneys for Defendant Daiichi Sankyo Company, Limited*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on February 4, 2022.

*/s/ Preston K. Ratliff II*