# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| SEAGEN INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:20-cv-00337-JRG |
| | ) |
| DAIICHI SANKYO CO., LTD., | ) |
| | ) |
| Defendant, and | ) |
| | ) |
| ASTRAZENECA PHARMACEUTICALS | ) |
| LP and ASTRAZENECA UK LTD., | ) |
| | ) |
| Intervenor-Defendants. | ) |

**DAIICHI SANKYO COMPANY, LIMITED'S SUR-REPLY
IN OPPOSITION TO SEAGEN INC.'S MOTION TO USE DISCOVERY FROM
THIS CASE TO PRESENT IN A PREVIOUSLY CLOSED PRIVATE ARBITRATION**

Seagen's Reply (Dkt. 283) fails to rebut the arguments in Daiichi Sankyo Japan's Opposition (Dkt. 278) or otherwise excuse Seagen's failure to seek and obtain leave of this Court prior to using discovery materials from this case in the Arbitration. Although Daiichi Sankyo Japan does not oppose prospective leave, it opposes Seagen's motion to the extent it asks the Court to grant leave retroactively for Seagen's actions before Seagen sought leave of this Court. As requested in Daiichi Sankyo Japan's related Motion for Sanctions (Dkt. 308), Seagen should be sanctioned for its violations of the Court's orders.

### A. Seagen Mischaracterizes Daiichi Sankyo Japan's Arguments in an Attempt to Excuse its Failure to Seek and Obtain Leave of Court

As Daiichi Sankyo Japan explained in its opposition brief (Dkt. 278), Seagen's reliance on *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 2016 WL 1719657 (E.D. Wis. Mar. 16, 2016) to excuse its conduct is unavailing, because the party in that case provided only Bates numbers and high-level descriptions of documents. Seagen here did far more than provide high-level descriptions of documents. (*See* Dkt. 278 at 6-7.) In an attempt to ignore the factual distinctions, Seagen mischaracterizes Daiichi Sankyo Japan's arguments regarding *Milwaukee*. Seagen states: "[Daiichi Sankyo Japan] argues that *Milwaukee* is distinguishable because Seagen used direct quotes from Dr. Morita's deposition testimony in Seagen's reply letter to the arbitrator and in its presentation during hearing on the motion to reopen." (Dkt. 283 at 3.) But that is inaccurate. Daiichi Sankyo Japan's argument was that Seagen's motion, reply, oral argument, and demonstrative slides all provided more than "high-level descriptions" of the documents and so *Milwaukee* does not apply nor provide Seagen any cover whatsoever. (*See* Dkt. 278 at 6-7.) Daiichi Sankyo Japan's argument was not limited to the impropriety of Seagen's direct quotation of the Texas Discovery Materials, but also highlighted Seagen's misconduct by including detailed descriptions of the contents of the Texas Discovery Materials in Seagen's motion to reopen.

Seagen also argues that its extensive direct quotation of the Texas Discovery Materials in its reply, oral argument, and demonstrative slides is excused because Daiichi Sankyo Japan "opened the door for the parties to use the materials in the arbitration" when Daiichi Sankyo Japan's opposition used *its own* discovery materials (which it was free to do and was not restricted by the Discovery Order and Protective Order). (Dkt. 283 at 3-4.) This argument (that a party's use of its own confidential materials opens the door to an opposing party breaching a protective order with impunity) is entirely unsupported. Unsurprisingly, Seagen cites no case law or provision of the Discovery Order or Protective Order that provides for such an exception.

**B.      Seagen's Attempts to Distinguish *Jazz* and Other Cases Fail and Instead Underscore the Conclusion that Seagen Violated the Court's Orders Here**

Seagen attempts to distinguish *Jazz Pharms., Inc. v. Amneal Pharms. LLC*, 2016 WL 11480203 (D.N.J. Jan. 22, 2016), by highlighting that, unlike the Court's Discovery Order and Protective Order here, the protective order in that case "included no instructions regarding the use of produced information in another proceeding." (Dkt. 283 at 4.) But that supposed distinction does not help Seagen; in fact, it highlights the impropriety of Seagen's conduct. The court in *Jazz* found a party's use of discovery materials in another proceeding to violate the protective order ***even though it did not include express provisions regarding cross-use***. Here, the Court's Discovery Order and Protective Order ***specifically include*** express provisions regarding cross-use and the requirements therefor, ***and Seagen ignored those express requirements***.

Likewise, Seagen's attempts to distinguish *Jazz* and the other cases cited by Daiichi Sankyo Japan—by arguing *it* used the materials in another proceeding for different reasons than the parties in those cases, (Dkt. 283 at 4-5)—are inapposite because those are distinctions without a difference here. The Court's Discovery Order and Protective Order set out the requirements for ***any*** cross-use of materials; they do not distinguish between different reasons or contexts for such cross-use. (*See*

- 2 -

Dkt. 51 at ¶ 12(b); Dkt. 248 at ¶ 8.).

Also unavailing is Seagen's reference to the fact that the court in *Jazz* expressed possible concern if protective orders were used to block legitimate discovery in other actions. Notably, the court's directive in that case to address that potential concern was for the parties to reach agreement on a cross-use provision to add to the protective order. *Jazz Pharms.*, 2016 WL 11480203, at *4. Here there *are* such cross-use provisions already, and (again) the issue is that Seagen failed to follow those procedures. There was nothing preventing Seagen from seeking leave of Court prior to filing its motion to reopen the Arbitration. Seagen could have sought the required leave on an expedited basis. Instead, it ignored this Court's orders and now seeks forgiveness after-the-fact.

### C. Seagen Fails to Rebut Daiichi Sankyo Japan's Prejudice Showing

Seagen's arguments regarding prejudice are unavailing. Seagen disputes that it is using this Court's processes to obtain discovery that has no relevance to this action and that Seagen instead wishes to use in the Arbitration, but it *still* fails to connect the materials in question to any of the claims of the patent-in-suit. (*See* Dkt. 299 at 3-4.) Seagen states: "As Seagen explained in its *three* motions to compel and renewed motion for sanctions (Dkts. 79, 187, 234, 267), the lab notebooks reflect the ▮▮▮▮▮▮▮▮ in this case and prove that [Daiichi Sankyo Japan] copied Seagen's ▮▮▮▮▮▮ in designing aspects of that product that meet elements of the asserted claims." (Dkt. 283 at 5.) But there are at least two deficiencies in this argument by Seagen. First, Seagen's first two motions to compel did not say *anything* about lab notebooks; instead, lab notebooks were first asserted in Seagen's third motion to compel. Thus, while Seagen seemingly references the fact it filed three motions to compel (two of which it voluntarily withdrew after Daiichi Sankyo Japan produced the material Seagen requested) in an effort to paint Daiichi Sankyo Japan as a bad actor, Seagen's argument highlights how (i) Seagen's request for lab notebooks was only recently made (undermining Seagen's accusations of

misconduct and request for sanctions, *see* Dkt. 299 at 5), and (ii) Seagen has made a habit of prematurely filing motions, accepting document productions in satisfaction thereof, and then moving the goalposts to demand still further documents (while dressing up their new requests as "renewed" motions). Second, Seagen's assertion that the ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ and ▬▬▬▬▬▬ is factually incorrect because, among other things, the lab notebooks show ▬▬▬▬▬▬▬▬▬▬▬▬ (the patent-in-suit claims only certain drug products and not any method of making them). (*See* Dkt. 299 at 1-4, 6-7.)

Seagen also argues that Daiichi Sankyo Japan "cannot complain that reopening the arbitration hearing is somehow prejudicial" because of Daiichi Sankyo Japan's "own misconduct" in purportedly withholding documents. (Dkt. 283 at 5.) Daiichi Sankyo Japan did not engage in any misconduct or withhold any documents; instead, it acted in good faith and produced the lab notebooks in question promptly after they were identified for the first time during Dr. Morita's deposition and others were requested by Seagen. (*See* Dkt. 299 at 3-5.)

### D. Seagen's Reply is Replete with Other Mischaracterizations

Seagen's Reply is filled with factual mischaracterizations regarding the materials in question, the parties' interactions, and these proceedings (as an example, Seagen's assertion discussed above where it claimed to have explained the relevance of the lab notebooks in all three of its motions to compel despite not raising the lab notebooks until the third such motion). Seagen has employed the strategy of flooding its Reply with so many misstatements that it is impractical for Daiichi Sankyo Japan to address and correct them all. Set forth below are examples of Seagen's mischaracterizations.

For example, Seagen claims that the parties met and conferred on January 12 about Seagen's intent to seek leave to cross-use the Texas Designated Materials. Although the motion would necessarily be belated (by this time Seagen had already used the Texas Designated Materials

in the Arbitration), Seagen states that it provided the draft joint motion "immediately" thereafter, and that it proceeded to file its motion on January 14 after Daiichi Sankyo Japan "failed to respond within the requested time." (Dkt. 283 at 1 n.2.) In reality, the draft joint motion was provided at 6:28pm CT (after close of business) the following day on January 13, and Seagen demanded Daiichi Sankyo Japan's agreement by 10:00am CT on January 14. Notably, the draft joint motion was materially different in scope than the parties discussed during the January 12 meet and confer; where Seagen previously indicated it only sought leave as to the Texas Discovery Materials, the draft joint motion would permit Seagen cross-use of **all** discovery from this action. Further, Daiichi Sankyo Japan did not "fail[] to respond within the requested time." Seagen provided the draft motion after close of business CT on January 13 and demanded a response by 10:00am CT the next morning, an unreasonable timeframe to expect counsel for Daiichi Sankyo Japan to confer with its client and make a decision on whether to agree to the draft motion. Daiichi Sankyo Japan nevertheless responded by 10:00am CT on January 14, confirming it was in receipt and would get back to Seagen. (Ex. 1.) Seagen, however, proceeded to file its motion.

Seagen also claims that during a January 28 meet and confer, it proposed filing a stipulation permitting the cross-use of certain documents and offered to withdraw its motion seeking leave as moot, but Daiichi Sankyo Japan "refused and instead filed its opposition." (Dkt. 283 at 3.) That is misleading. Daiichi Sankyo Japan filed its opposition—which disclosed and illustrated to the Court Seagen's violations of the Discovery Order and Protective Order—**before** the Parties' meet and confer on January 28.[1]

---

[1] Moreover, Seagen omits that it conditioned its proposed stipulation on Daiichi Sankyo Japan withdrawing its opposition (which would have the effect of concealing and condoning Seagen's violations of the Court's orders), which was a condition Daiichi Sankyo Japan understandably would not agree to.

| | |
|---|---|
| Dated: February 10, 2022 | Respectfully submitted, |
| | /s/ *Preston K. Ratliff II* |

Deron R. Dacus
State Bar No. 00790553
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas, 75701
+1 (903) 705-1117
+1 (903) 581-2543 facsimile
ddacus@dacusfirm.com

J. Mark Mann
State Bar No. 12926150
mark@themannfirm.com
MANN | TINDEL | THOMPSON
300 West Main Street
Henderson, Texas 75652
(903) 657-8540
(903) 657-6003 (fax)

*Attorneys for Defendant Daiichi Sankyo Company, Limited*

OF COUNSEL:

Preston K. Ratliff II
Ashley N. Mays-Williams
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Jeffrey A. Pade
Paul Hastings LLP
2050 M Street NW
Washington, DC 20036
(202) 551-1700

*Attorneys for Defendant Daiichi Sankyo Company, Limited*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on February 10, 2022.

/s/ *Preston K. Ratliff II*