# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| SEAGEN INC., <br><br>    *Plaintiff,* <br><br> v. <br><br> DAIICHI SANKYO CO., LTD., <br><br>    *Defendant*, <br><br> ASTRAZENECA PHARMACEUTICALS LP, and ASTRAZENECA UK LTD, <br><br>    *Intervenor-Defendants.* | Civil Action No.  2:20-CV-00337-JRG |

## MOTION FOR JUDGMENT FOR SUPPLEMENTAL DAMAGES AND ONGOING ROYALTIES

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1
II. SUPPLEMENTAL DAMAGES ARE APPROPRIATE ................................................. 1
III. THE COURT SHOULD AWARD ONGOING ROYALTIES TO SEAGEN ................. 3
    A. An Ongoing Royalty is Appropriate ..................................................................... 3
    B. The Royalty Rate for Post-Verdict Supplemental Damages and Ongoing Royalty ................................................................................................................... 4
        1. Licensing Considerations .......................................................................... 6
        2. Economic Considerations ......................................................................... 7
        3. Validation of Seagen's Technology and Strength of Seagen's Claims ....................................................................................................... 9
IV. CONCLUSION .............................................................................................................. 10

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Amado v. Microsoft Corp.*,
   517 F.3d 1353 (Fed. Cir. 2008)..................................................................................4, 5

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
   876 F.3d 1350 (Fed. Cir. 2017).........................................................................................5

*Boston Sci. Corp. v. Johnson & Johnson*,
   No. C 02-00790 SI, 2009 U.S. Dist. LEXIS 35372 (N.D. Cal. Apr. 19, 2009).........................6

*Cioffi v. Google, Inc.*,
   Case No. 2:13-cv-103-JRG, slip op. (E.D. Tex. Sep. 12, 2017).................................................3

*Creative Internet Adver. Corp. v. Yahoo! Inc.*,
   674 F. Supp. 2d 847 (E.D. Tex. 2009)...............................................................................5

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
   No. 2:15-CV-1202-WCB, 2017 WL 3034655 (E.D. Tex. July 18, 2017).................................3

*Genband US LLC v. Metaswitch Networks Corp.*,
   No. 2:14-cv-33-JRG, 2018 WL 11357619 (E.D. Tex. Mar. 22, 2018)......................................5

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970)..................................................................................6

*Mondis Tech. Ltd. v. Chimei Innolux Corp.*,
   822 F. Supp. 2d 639 (E.D. Tex. 2011)..............................................................................5

*Nat'l Instruments Corp. v. Mathworks, Inc.*,
   No. 2:01-cv-11-TJW, 2003 WL 24049230 (E.D. Tex. June 23, 2003).....................................2

*Packet Intelligence LLC v. NetScout Systems, Inc.*,
   Case No. 2:16-cv-230-JRG, slip op. (E.D. Tex. Sep. 7, 2018)................................................9

*Packet Intelligence LLC v. NetScout Systems, Inc.*,
   Case No. 2:16-cv-230-JRG, Dkt. 303 (E.D. Tex. Sep. 7, 2018), *vacated and
   remanded on other grounds*, 965 F.3d 1299 (Fed. Cir. 2020)..................................................6

*Paice LLC v. Toyota Motor Corp.*,
   504 F.3d 1293 (Fed. Cir. 2007).........................................................................................5

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
   849 F.3d 1360 (Fed. Cir. 2017).........................................................................................2

## TABLE OF CONTENTS
(continued)

**Page**

*Soverain Software LLC v. J.C. Penney Corp.*,
    899 F. Supp. 2d 574 (E.D. Tex. 2012)...................................................................................4

*Summit 6, LLC v. Samsung Elecs. Co.*,
    802 F.3d 1283 (Fed. Cir. 2015).............................................................................................3

*Telcordia Techs., Inc. v. Cisco Sys., Inc.*,
    612 F.3d 1365 (Fed. Cir. 2010).............................................................................................3

*Whitserve, LLC v. Computer Packages, Inc.*,
    694 F.3d 10 (Fed. Cir. 2012).................................................................................................3

*XY, LLC v. Trans Ova Genetics*,
    890 F.3d 1282 (Fed. Cir. 2018)..........................................................................................4, 5

**Statutes**

35 U.S.C. § 283....................................................................................................................................2

I.  **INTRODUCTION**

The jury found that DSC willfully infringed Seagen's '039 patent and awarded $41.82 million in damages for DSC's past infringement.  (Dkt. 369 at 7.)  $41.82 million was the amount that Seagen's damages expert, Carrie Distler, calculated as a reasonable royalty based on an 8% rate applied to DSI's net sales of Enhertu in the United States between October 20, 2020, and March 31, 2022 of $522.752 million.  (Distler Decl. Ex. 1, Trial Tr. (April 7, 2022) ("Distler Tr.") at 145:13–20; 182:4–11.)  Defendants' damages expert, Christine Meyer, did not challenge Ms. Distler's royalty base or her methodology for calculating damages based on multiplying the base by a royalty rate; Dr. Meyer contested only the rate.  (Distler Decl. Ex. 1, Trial Tr. (April 7, 2022) ("Meyer Tr.") at 286:13–19.)

Seagen now requests that the Court award:  (1) supplemental damages for U.S. sales of Enhertu between April 1, 2022 and the entry of judgment; and (2) an ongoing royalty for U.S. sales of Enhertu between the entry of judgment and the expiration of the '039 patent on November 5, 2024.  DSI's net sales of Enhertu in the United States are the appropriate base for both supplemental damages and an ongoing royalty.  For supplemental damages from April 1, 2022, to the April 8 jury verdict, Seagen seeks the 8% royalty rate used by the jury.  For supplemental damages after the jury verdict on April 8, 2022, and for the ongoing royalty, Seagen seeks an increase from the jury's royalty rate of 8% to 10–12% applied to DSI's U.S. net sales of Enhertu after the April 8, 2022 verdict, based on a renewed hypothetical negotiation taking into account the shift in bargaining position between the parties.

II.  **SUPPLEMENTAL DAMAGES ARE APPROPRIATE**

At trial, the jury heard evidence relating to U.S. sales of Enhertu between October 20, 2020, when the '039 patent issued, and March 31, 2022, the latest date for which DSC produced DSI's U.S. net sales projections for Enhertu.  (Distler Decl. Ex. 1, Distler Tr. at 181:18–23.)

1

SF-4796886

There is no question that the jury applied Ms. Distler's 8% royalty rate to the royalty base of DSI's U.S. net sales of Enhertu to arrive at its damages award, as the dollar figure matches her calculation exactly. (Declaration of Carrie L. Distler ("Distler Decl.") ¶ 6.) The jury's verdict, however, does not account for sales of Enhertu after March 31, 2022. Seagen, therefore, should be compensated for U.S. sales between April 1, 2022 and the entry of final judgment as a "failure to award such damages would grant an infringer a windfall by enabling it to infringe without compensating a patentee . . . ." *Nat'l Instruments Corp. v. Mathworks, Inc.*, No. 2:01-cv-11-TJW, 2003 WL 24049230, at *4 (E.D. Tex. June 23, 2003).

The supplemental damages period includes a pre-verdict period between April 1 and April 8, 2022, and a post-verdict period from April 9 through July 19, 2022, the date of the final judgment. Seagen asks the Court to award supplemental damages for April 1 to April 8, 2022, at the rate of 8% applied to DSI's U.S. net sales of Enhertu. Had DSC provided DSI's updated U.S. sales figures through the jury verdict, Seagen would have sought damages for these pre-verdict sales as part of the jury award using the same analysis as pre-verdict sales through March 31, 2022. The Court should order DSC to provide an accounting of DSI's net sales of Enhertu in the United States from April 1, 2022, to the date of entry of judgment, which is necessary to arrive at the amount of supplemental damages due.

For post-verdict U.S. sales of Enhertu from April 9 through July 19 (the entry of final judgment), Seagen asks the Court to award supplemental damages at a rate equal to the increased ongoing royalty rate of 10–12%, applied to DSI's U.S. sales of Enhertu as justified below, as this portion of the supplemental damages would have accrued after the renewed hypothetical negotiation. *See infra* Section III.B.

### III. THE COURT SHOULD AWARD ONGOING ROYALTIES TO SEAGEN.

#### A. An Ongoing Royalty is Appropriate

Under 35 U.S.C. § 283, a court may "award 'an ongoing royalty for patent infringement in lieu of an injunction' barring the infringing conduct." *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1377 (Fed. Cir. 2017) (quoting *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007)). An ongoing royalty is an equitable form of relief. *See Paice*, 504 F.3d at 1313 n.13. It is appropriate where, as here, the jury awarded damages for past infringement in the form of a reasonable royalty rather than a lump sum award and no injunction has issued.[1] *See Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1379 (Fed. Cir. 2010) ("An award of an ongoing royalty is appropriate because the record supports the district court's finding that [the plaintiff] has not been compensated for [the defendant's] continuing infringement."); *Cioffi v. Google, Inc.*, Case No. 2:13-cv-103-JRG, slip op. at 5 (E.D. Tex. Sep. 12, 2017) (awarding ongoing royalty where jury award was a reasonable royalty for past infringement); *cf. Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1300-01 (Fed. Cir. 2015) (denying ongoing royalty "because the jury award compensated [the plaintiff] for both past and future infringement through the life of the patent."). Granting Seagen an ongoing royalty avoids serial litigation. *See Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2017 WL 3034655, at *2 (E.D. Tex. July 18, 2017).

Where the jury has not expressly indicated the form of its reasonable royalty award, the form of the award may be inferred based on the arguments and evidence presented to the jury during trial, the district court's instructions to the jury, and the verdict form itself. *See Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 35 (Fed. Cir. 2012) (analyzing the

---

[1] In its complaint, Seagen sought a running royalty in lieu of an injunction. (Dkt. 1.)

3

evidence at trial and rejecting the argument that the jury awarded a paid-up license).  Here, the jury awarded $41.82 million to compensate Seagen "for its damages for infringement from October 20, 2020 through March 31, 2022." (Dkt. 369 at 7.)  There is no question that the jury adopted Ms. Distler's 8% royalty rate applied to the royalty base of DSI's U.S. net sales of Enhertu through March 31, 2022 to arrive at its damages award, as the dollar figure matches her 8% calculation exactly and the parties' experts agreed on the royalty base and the methodology of multiplying the agreed-on base by the rate.  (Distler Decl. ¶ 6.)

At a minimum, this Court should award Seagen an ongoing royalty rate of 8% applied to DSI's U.S. net sales of Enhertu.  *See XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1298 (Fed. Cir. 2018) (vacating and remanding district court award of ongoing royalty at a rate lower than the jury's implied rate where "the district court identified no economic factors that would justify the imposition of rates that were lower than the jury's.").  For reasons explained below, however, the circumstances justify increasing the ongoing royalty.

### B.  The Royalty Rate for Post-Verdict Supplemental Damages and Ongoing Royalty

For DSC's infringing sales after the jury verdict on April 8, Seagen requests that the Court award an increased royalty rate for both supplemental damages through entry of judgment (*see supra* Section II) and for the ongoing royalty after entry of judgment.  The circumstances warrant an increased royalty rate of no less than 10–12% for the post-verdict period, representing a 25–50% increase of the jury's damages award.

The starting point of the post-verdict hypothetical negotiation would be the jury's verdict—an implied royalty rate of 8%.  (Distler Decl. ¶ 8.)  Rates for supplemental damages or an ongoing royalty should equal or exceed the royalty rate awarded by a jury.  *See Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362 n.2 (Fed. Cir. 2008) (ongoing royalty rate "should fall

somewhere between the $0.04 amount the jury found to be an appropriate pre-verdict reasonable royalty and the $2.00 amount Amado was willing to accept in exchange for a license."); *see also XY, LLC*, 890 F.3d at 1297 ("When patent claims are held to be not invalid and infringed, this amounts to a substantial shift in the bargaining position of the parties.") (quotation omitted); *Soverain Software LLC v. J.C. Penney Corp.*, 899 F. Supp. 2d 574, 589 (E.D. Tex. 2012), *reversed on other grounds by* 778 F.3d 1311 (Fed. Cir. 2015) ("The jury's implied royalty rate provides a starting point for determining the ongoing post-judgment royalty rate."). Because "[t]here is a fundamental difference . . . between a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement," *Amado*, 517 F.3d at 1361, "[t]he Federal Circuit has instructed that post-verdict infringement should typically entail a higher royalty rate than the reasonable royalty found at trial." *Creative Internet Adver. Corp. v. Yahoo! Inc.*, 674 F. Supp. 2d 847, 861 (E.D. Tex. 2009) (citing *Amado*, 517 F.3d at 1362 n.2); *see also Paice*, 504 F.3d at 1317 (Rader, J., concurring) ("[P]re-suit and post-judgment acts of infringement are distinct, and may warrant different royalty rates given the change in the parties' legal relationship and other factors.").

In determining whether to increase the royalty rate to be applied post-verdict, a court examines the change in circumstances from the hypothetical negotiation underlying the jury's damages award and the nature and scope of the defendant's conduct. *See, e.g.*, *Mondis Tech. Ltd. v. Chimei Innolux Corp.*, 822 F. Supp. 2d 639, 646–53 (E.D. Tex. 2011). A court may base the post-verdict royalty on a hypothetical negotiation using the *Georgia–Pacific* or other factors, typically focusing on any changed circumstances affecting the parties' bargaining position and the hypothetical negotiation. *See Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1370 (Fed. Cir. 2017); *Genband US LLC v. Metaswitch Networks Corp.*, C.A.

No. 2:14-cv-33-JRG, 2018 WL 11357619, at *19 (E.D. Tex. Mar. 22, 2018).

Here, changed circumstances warrant increasing the royalty rate. "The requirement to focus on changed circumstances is particularly important when, as in this case, an ongoing royalty effectively serves as a replacement for whatever reasonable royalty a later jury would have calculated in a suit to compensate the patentee for future infringement." *XY, LLC*, 890 F.3d at 1297. The focus of the inquiry centers on Seagen's improved bargaining position and other changed economic factors. *Id.* at 1298. The *Georgia-Pacific* framework recognizes that increased competition places upward pressure on the royalty rate to reflect, for example, the comparatively greater injury that results from licensing a competitor. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (factors 8 & 15); *see also Boston Sci. Corp. v. Johnson & Johnson*, No. 02-cv-00790-SI, 2009 WL 975424, at *7 (N.D. Cal. Apr. 19, 2009) ("a patent owner is more likely to extract a greater royalty from a direct competitor in order to account for lost sales and profits."). This Court has previously determined that where a jury found willful infringement and awarded damages based on a reasonable royalty, it was appropriate to "assume that the jury's finding would have strengthened the plaintiff's bargaining position had the parties negotiated a license after the jury verdict." *Packet Intel. LLC v. NetScout Sys., Inc.*, Case No. 2:16-cv-230-JRG, Dkt. 303, slip op. at 7 (E.D. Tex. Sep. 7, 2018), *vacated and remanded on other grounds*, 965 F.3d 1299 (Fed. Cir. 2020) (quotation omitted). A post-verdict hypothetical negotiation would have affected several *Georgia-Pacific* factors that warrant increasing the royalty rate.

### 1. Licensing Considerations

The starting position of the parties in a post-verdict hypothetical negotiation would be the 8% implied rate found by the jury. In addition to the findings of willful infringement and validity, the jury's award rejected the applicability of the license agreements bearing ▮

royalty rates that DSC's expert witnesses opined were comparable. (Distler Decl. ¶ 10.) Rather, in choosing to adopt the highest rate provided—8%—the jury's award indicates that the ▇▇▇▇ agreement is the most comparable. For good reason. Given the number of similarities between DSC in the pre-verdict hypothetical negotiation and ▇▇▇▇ in negotiating the ▇▇▇▇ Agreement, the ▇▇▇▇ Agreement more closely reflects a real-world outcome for a negotiation for ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇. (Distler Decl. ¶ 10.) As Ms. Distler opined, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and thus the negotiation range in the pre-verdict hypothetical negotiation ranged from 5% to ▇▇▇▇. (*Id.*) Unlike in the pre-verdict hypothetical negotiation, in the *post-verdict* hypothetical negotiation, DSC would no longer be a willing licensee, but an adjudged infringer negotiating with Seagen for rights to continue to use Seagen's property in Enhertu. (*Id.*) Seagen would recognize its gain in bargaining power and look to the higher end of the royalty rate range that reflected its benefit in net present value from the ▇▇▇▇ Agreement. (*Id.*)

In a post-verdict hypothetical negotiation, Seagen would also be aware of the consequences of a royalty rate precedent for an adjudged infringer that did not reflect Seagen's value it derived from ▇▇▇▇—the most comparable agreement. (Distler Decl. ¶ 11.) From a business policy perspective, Seagen would be concerned about creating a licensing policy or precedent that would suggest adjudged infringers receive lower royalties than willing licensees that seek rights to Seagen's property and negotiate terms before infringement. (*Id.*) These factors together put upward pressure on the jury's implied rate of 8%.

### 2. Economic Considerations

Enhertu is increasingly profitable and commercially successful. Since trial, Enhertu has received three additional FDA approvals and has demonstrated strong potential in other HER2

7

SF-4796886

cancers. First, Enhertu was approved for use with HER2-positive metastatic breast cancer patients treated with one prior anti-HER2-based regimen (*i.e.*, it has been approved in the "second line") on May 5, 2022. (Distler Decl. ¶ 15.) Second line approval opens up a larger pool of potential patients and unlocks an additional $100 million milestone payment to DSC from AstraZeneca. (*Id.*) Second, on August 6, 2022, Enhertu became the first approved therapy for patients with newly identified HER2-low breast cancer. (*Id.* ¶ 16.) Approximately 287,000 new cases of breast cancer are diagnosed in the United States each year, and it is estimated that nearly 50% of these patients are considered either HER2-low or part of the addressable patient population for Enhertu. (*Id.*) Third, on August 12, 2022, ENHERTU was approved for the treatment of adult patients with unresectable or metastatic non-small cell lung cancer ("NSCLC") whose tumors have activating HER2 (ERBB2) mutations. (*Id.* ¶ 18.) The approval for NSCLC also unlocks an additional $125 million milestone payment to DSC from AstraZeneca. (*Id.*) These additional approvals mean that Enhertu is even more valuable to DSC than in the original hypothetical negotiation, and thus Seagen has greater bargaining power over DSC in negotiating a license to the '039 patent under at least *Georgia-Pacific* Factor 8 ("the established profitability of the product made under the patent; its commercial success; and its current popularity"). (*Id.* ¶¶ 13–19.)

Competition between Seagen and DSC has continued to increase since the date of the original hypothetical negotiation. With Enhertu's post-verdict approval in the second line, Seagen is facing additional competition for its Tukysa therapy, which also has second line approval. (Distler Decl. ¶¶ 20–27.) Tukysa may further face increased competition following Enhertu's post-verdict clinical trial results showing its preliminary efficacy in patients with active brain metastasis—a patient population for which Tukysa has demonstrated efficacy and

8

FDA approval.  (*Id.* ¶¶ 24–25.)  ███████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███.  (Distler Decl. ¶ 27; *Id*. Ex. 1, Distler Tr. at 165:2–166:4.)  Thus, with increasing and future competition against Enhertu, the competitive landscape between Seagen and DSC would allow Seagen to demand a higher royalty rate from DSC for its continued infringement.  *See Georgia-Pacific*, 318 F. Supp. 1116 at 1120, Factor 5 ("The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.").  Although the jury heard evidence regarding Seagen's agreement with ███████, they did not hear evidence that ███████████████████████████████████████.

From an economic perspective, the additional approvals Enhertu has gained since the verdict and the increased competition between Seagen and DSC would put upward pressure on the jury's implied rate of 8%.  (Distler Decl. ¶ 13.)

       **3.**     **Validation of Seagen's Technology and Strength of Seagen's Claims**

In the post-verdict hypothetical negotiation, the acknowledgement of the significance of Seagen's ADC linker technology embodied in the '039 patent to Enhertu would be known to both Seagen and DSC.  As compared with Kadcyla, DSC identified its linker and payload as a potential differentiator, and that distinction has led to Enhertu being FDA approved in the second line in May 2022 and recognized by the NCCN guidelines preferred over Kadcyla.  (Distler Decl. ¶ 28.)  Not only has Seagen's ADC linker technology embodied in the '039 patent been validated as superior to Kadcyla based on Enhertu's updated guidelines and additional FDA approvals, but also by the jury's verdict that established the patent's validity and infringement by DSC.  (Distler Decl. ¶ 29.)

After the jury verdict, Seagen further successfully prevented the institution of DSC and

AstraZeneca's PGR proceedings. (Dkt. 430-1.) This adds to Seagen's bargaining position by virtue of increased confidence in the '039 patent's validity. *See Packet Intelligence*, No. 2:16-cv-230-JRG, slip op. at 7 (considering plaintiff's track record of successfully asserting patent, including successfully preventing institution of IPR proceedings, in determining ongoing royalty).

\* \* \*

As a result of the jury's finding that DSC willfully infringed the '039 patent and the changed circumstances since the verdict, the bargaining position of the parties has shifted further in favor of Seagen since the pre-verdict hypothetical negotiation. Seagen would have a stronger bargaining position than DSC and would look to ███████████████████████████████████████ —as the appropriate benchmark for royalties payable through the remaining life of the '039 patent. Given the considerable upward pressure of the changed circumstances and the jury's validation of the ███████ agreement as a benchmark, the Court should award Seagen an ongoing royalty of 10–12%.

## IV. CONCLUSION

For these reasons, the Court should order DSC to account for its sales of Enhertu in the United States from April 1 through the date of judgment, and to pay supplemental damages and an ongoing royalty at the following rates for sales through the date of judgment, further increased by the same amount that the Court finds appropriate to increase the jury's damages award:

| Period of Infringing Sales | Royalty Rate |
| --- | --- |
| April 1, 2022 – April 8, 2022 (Pre-verdict) | 8% |
| April 9, 2022 – July 19, 2022 (Verdict through judgment) | 10–12% |
| July 20, 2022 – November 5, 2024 (Judgment through expiration) | 10–12% |

10

SF-4796886

| | |
|---|---|
| Dated: August 16, 2022 | By: /s/ Matthew A. Chivvis |
| | Michael A. Jacobs |
| | MJacobs@mofo.com |
| | Matthew A. Chivvis |
| | MChivvis@mofo.com |
| | MORRISON & FOERSTER LLP |
| | 425 Market Street |
| | San Francisco, CA 94105 |
| | Telephone: 415.268.7000 |
| | Facsimile: 415.268.7522 |
| | |
| | Bryan Wilson |
| | BWilson@mofo.com |
| | MORRISON & FOERSTER LLP |
| | 755 Page Mill Road |
| | Palo Alto, California 94304-1018 |
| | Telephone: 650.813.5600 |
| | Facsimile: 650.494.0792 |
| | |
| | Melissa R. Smith |
| | Texas State Bar No. 24001351 |
| | melissa@gillamsmithlaw.com |
| | GILLAM & SMITH, LLP |
| | 303 South Washington Avenue |
| | Marshall, Texas 75670 |
| | Telephone: 903.934.8450 |
| | Facsimile: 903.934.9257 |
| | |
| | *Of Counsel:* |
| | |
| | T. John Ward, Jr. |
| | Texas State Bar No. 00794818 |
| | jw@wsfirm.com |
| | Wesley Hill |
| | Texas State Bar No. 24032294 |
| | wh@wsfirm.com |
| | Charles Everingham IV |
| | Texas State Bar No. 00787447 |
| | ce@wsfirm.com |
| | Andrea L. Fair |
| | Texas State Bar No. 24078488 |
| | andrea@wsfirm.com |
| | WARD, SMITH & HILL, PLLC |
| | 1507 Bill Owens Parkway |
| | Longview, Texas 75604 |
| | Telephone: 903.757.6400 |
| | Facsimile: 903.757.2323 |
| | |
| | *Attorneys for Plaintiff Seagen Inc.* |


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 16th day of August, 2022.

/s/ Melissa R. Smith

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h), Seagen counsel Matthew Chivvis and Wesley Hill met and conferred with counsel for Defendants DSC and AstraZeneca, including Preston K. Ratliff II, Daron Dacus, Jennifer Ainsworth, and David Berl regarding a schedule for Seagen's post-trial motions, including its intention to file a motion for judgment for supplemental damages and ongoing royalty on April 22, 2022. Defendants opposed the entry of a schedule, but did not provide a position on the present motion.

/s/ Melissa R. Smith

12

SF-4796886